## MORFORD v. UNGER.

The object of the act entitled "an act to amend the act to incorporate the city of Muscatine," approved July 14, 1856, (Laws of 1856, 49), is sufficiently expressed in its title; and the said act is not in violation of section 26 of the third article of the constitution of 1846, which provides that "every law shall embrace but one object, which shall be expressed in its title."

Where the business of the general assembly, at a special session convened by the governor, is not restricted by some constitutional provision, it may enact any law at such special session, that it might at a regular session. The powers of the general assembly not being derived from the governor's proclamation, it is not confined to the special purposes for which it may have been convened by him.

The seventh section of the act entitled "an act to amend the act to incorporate the city of Muscatine," approved July 14, 1856, which provides that the act shall take effect from and after its acceptance by the city council of Muscatine, and its publication at the expense of the city, is not a delegation of its powers by the general assembly to the people, or any other tribunal, and does not render the act invalid under the constitution of 1846.

The general assembly may provide, that the authority of a city shall not be extended over new territory, but upon the expressed consent of the people of the city.

The right of the general asembly to create corporations for municipal purposes, conferred by the constitution of 1846, is not made to depend upon the consent of the inhabitants, or proprietors of the land, on which the proposed city or town is situate.

So, the power of imposing a local government upon a town or city, includes the power of ascertaining the extent of the corporation and its just boundaries, as well as the powers to be vested in the local government; and among the powers deemed essential to the objects of the corporation, is that of levying such reasonable taxes upon the property within its limits as may be necessary for such local purposes as the corporation is authorized to accomplish.

Where the owner of land adjoining a city or town, lays the same off into lots, and invites purchasers and settlers to occupy it with dwellings or otherwise, he cannot object to a law extending the authority of the local government over him and his land so laid out and occupied.

But where the land is vacant, or a cultivated farm, occupied by the owner for agricultural purposes, and not required for either streets or houses, or other purposes of a town, and solely for the purpose of increasing its revenue, it is brought within the taxing power, by an enlargement of the city limits, such an act, though on its face providing only for such extension of the city limits, is in reality nothing more than authority to

Morford v. Unger.

the city, to tax the land to a certain distance outside of its limits; and is, in effect, the taking of private property, without compensation, within the spirit and meaning of the constitution.

In such a case, the force and effect, and obvious intent of the act, is to subject such outside lands to city taxation, without the pretext of extending the protection of the city over them, and when the power of the legislature over local regulations and government, furnishes no legitimate basis for the act.

The extension of the limits of a city or town, so as to include its actual enlargement, as manifested by houses and population, is a legitimate exercise of legislative power, while an indefinite or unreasonable extension, so as to embrace lands and farms at a distance from the local government, is without authority.

The act entitled "an act to amend the act to incorporate the city of Muscatine," approved July 14, 1856, takes private property for public use, without compensation, and is unconstitutional and void.

*Appeal from the Muscatine District Court.*

THURSDAY, APRIL 7.

THIS is an action of replevin, to recover the possession of certain personal property described in the petition. The defendant justified the taking of the property, as marshal of the city of Muscatine, averring that he took the property by virtue of a precept or warrant, affixed to the tax list of said city, which was placed in his hands as his authority to collect the taxes due said city for the year 1857; and that he found the said plaintiff charged with the sum of $103,00, as taxes due said city, on the tax list so placed in his hands, &c. The answer sets out a copy of the warrant and tax list, and shows the due levy of, and non payment of the tax—to all which there was a replication in denial. Judgment for the defendant, and the plaintiff appeals. The other material facts appear in the opinion of the court. By agreement between the parties, the only question submitted to the supreme court was, whether the act entitled "An act to amend the act to incorporate the city of Muscatine," approved July 14, 1856, was constitutional?

*D. C. Cloud*, for the appellant.

I.  The act is unconstitutional, for the reason that the object of the act is not expressed in its title. *Indiana Central R. R. Co.* v. *Potts*, 7 Ind., 681; *Cannon* v. *Hemphill*, 7 Texas, 184; *Story* v. *Daniel*, 3 Ind., 348; 1 American Law Reg., 616; Constitution, sec. 26; *Railroad Co.* v. *Com. of Clinton Co.*, 1 Ohio State, 77; Acts of 1856, 49.

II.  An extra session of the legislature could not enact this law, unless it was one of the objects for which it was convened, as set forth in the governor's proclamation. Const., of 1846, Art. 3, secs. 2 and 3; Art. 4, sec. 9.

III.  The act is void, for the reason that it was not enacted in the manner prescribed in the constitution.   It must be re-enacted by the city council of Muscatine before its publication, and before its taking effect. *Santo* v. *The State*, 2 Iowa, 203; *Railroad Co.* v. *Com. of Clinton Co.*, 1 Ohio State, 87; *Maize* v. *The State*, 4 Ind., 347; 1 Am. Law Reg., 659; *People* v. *Collins*, 2 Ib., 591.

IV.  The act is unconstitutional, for the reason that it takes from the plaintiff his rights, without any equivalent. Const. of 1846, Art. 1, sec. 1; *Warner* v. *Charlestown*, 3 Liv. Law Mag., 115; *Marbury* v. *Madison*, 1 Cranch, 137; *Rice* v. *The State*, 7 Ind., 132; *Cobb* v. *Kingman*, 15 Mass., 198; *Ellis* v. *Marshall*, 2 Ib., 269; *Hampshire* v. *Franklin*, 16 Ib., 76.

*George S. Hebb*, for the appellee, cited the following authorities:   1 Ohio State, 83; *Hylton* v. *The United States*, 3 Dallas, 171; 4 Ib., 14; 14 Mass., 345; 16 Pick., 95; 2 Monr., 178; 2 Iowa, 165; 2 Ib., 280; 10 Ohio, 235; 11 Penn. State, 70; 9 Dana, 514; *Rice* v. *Foster*, 4 Harrington, (Del.), 479; *Fisher* v. *McGrier*, 1 Gray, 1; *Maize* v. *The State*, 4 Ind., 342; *State* v. *Cooper*, 5 Blackf., 258; 2 Peters, 522; *Ogden* v. *Sanders*, 12 Wheat., 270; 19 Johns., 58; 1 Cowen, 550; *Fletcher* v. *Peck*, 6 Cranch, 87.

Morford v. Unger.

*Richman & Brother*, on the same side, cited the following additional authorities: 3 Wash. C. C., 313; 15 Wend., 133; 2 Scam., 79; 3 Ib., 127; *The People* v. *Reynolds*, 5 Gilman, 1; 8 Barr., 391; *Savannah* v. *The State*, 4 Georgia, 26; *Belleville & Ill. R. R. Co.* v. *Gregory et al.*, 15 Ill., 20; *Martin* v. *Broach*, 6 Geor., 21; *Coles* v. *Madison County*, Breese, 120; *Bush* v. *Shipman et al.*, 4 Scam., 190; Wilcox on Corp., 26; 2 Kent Com., 275; *People* v. *Morrill*, 21 Wend., 679; Story on Cont., 260; *Bailey* v. *City of New York*, 3 Hill, 531; *Co. of Richland* v. *Co. of Lawrence*, 12 Ill., 8; *City of St. Louis* v. *Russell*, 9 Mis., 507; *Opinion of Supreme Court*, 6 Cushing, 578; *Harris* v. *Thompson*, 9 Barb., 350; 2 Gilm., 237.

*James Grant*, for the appellant, in reply, cited *The State* v. *Copeland*, 3 Rhode Island, 33; *Patterson* v. *Society*, &c., 4 Zabriskie, 343.

Stockton, J.—The only question to be considered in this case is, whether the act of the legislature of Iowa, approved July 14, 1856, entitled "An act to amend the act to incorporate the city of Muscatine" is constitutional. By this act, it is conceded the limits of the city of Muscatine were extended about one mile on the east, and about two miles on the north and west, beyond its former boundary. The plaintiff lived upon the territory brought into the city by the act aforesaid, upon land used exclusively for farming purposes, about one mile from the old city limits, and about the same distance from any lands laid out into city or town lots, or used as city property. His land, so used, was taxed by the city at the sum of one dollar per acre. This tax he refused to pay; and his property being destrained for the payment thereof, he brought this action of replevin, to test the constitutionality of the act extending the limits of the city.

It is objected that the object of the act is not expressed

in the title, and that it is, therefore, invalid, in virtue of that provision of the constitution of 1846, which required that "Every law shall embrace but one object which shall be expressed in its title." Const. 1846, Art. 3, sec. 26. The object expressed in this instance, was to amend the act incorporating the city. With this object was consistent the purpose of enlarging the limits of the city. These limits were fixed by the act sought to be amended, and an alteration of them was one of the modes in which the act was subject to amendment. The general purpose was well expressed by entitling the act, "an act to amend the act to incorporate the city of Muscatine ;" and, as entirely in consonance with such purpose, we think it was legitimate for the legislature to extend the limits of the city, or engraft any other provision not entirely inconsistent with the purpose of amending the charter then in force. If it could be objected, that by such enlargement of the limits, the city charter was not amended, there might be more plausibility in the objection that the object of the law was not expressed in its title. *Santo* v. *The State*, 2 Iowa, 209 ; *State* v. *Co. Judge, &c.*, 2 Ib., 283 ; *Belleville & I. C. R. R. Co.* v. *Gregory.*, 15 Ill., 20 ; *Martin* v. *Broach*, 6 Geo., 21 ; *Walker* v. *Caldwell*, 4 Lou. Am. Rep., 298; *Succession of Lanzetti*, 9 Ib., 329 ; *Læfou* v. *Defroc*, 9 Ib., 540; *Davis* v. *The State*, 7 Maryland, 151; *Battle* v. *Howard*, 13 Texas, 345 ; *Washington* v. *Murray*, 4 California, 388.

II.   The second objection made is, that the act in question was passed at an extra session of the general assembly, and was not one of the objects for which the same was convened.

It is provided by the constitution of 1846, (Art. 3, sec. 2), that "the sessions of the general assembly, shall be biennial, and shall commence on the first Monday of December next ensuing their election; unless the Governor shall, in the *interim*, convene the general assembly by proclamation." And Art. 4, sec. 9, provides that the Governor "may, on extraordinary occasions, convene the general assembly by proclamation, and shall state to both houses, when assembled, the purpose for which they have been convened."

Morford v. Unger.

When lawfully convened, whether in virtue of the provision of the constitution, or the Governor's proclamation, it is the " General Assembly " of the state, in which the full and exclusive legislative authority of the state is vested. Where its business at such session, is not restricted by some constitutional provision, the general assembly may enact any law at a special or extra session, that it might at a regular session. Its powers not being derived from the Governor's proclamation, are not confined to the special purpose for which it may have been convened by him.

III. By the seventh section of the act, it is provided that the same shall take effect from and after its acceptance by the city council of Muscatine, and its publication at the expense of the city. It is objected by the plaintiff, that this section requiring that the act should be accepted by the city council, before taking effect, rendered the whole act invalid, as not being enacted in the mode prescribed by the constitution.

The general assembly, it is well held, cannot relieve itself of the responsibility of its functions, by submitting its acts to a vote of the people; the duties of legislation are not to be exercised by the people at large. *Santo* v. *The State*, 2 Iowa, 203; *State* v. *Giebricht*, 5 Iowa, 491.

It may be well, however, to inquire whether there has been, in this instance, any delegation of its powers by the legislature to the people, or to any other tribunal. We think there has not been. The legislature might well provide that the authority of the city should not be extended over the new territory, but upon the expressed consent of the people of the city. In this case, it provided that such consent should be given through the city council, by its acceptance of the act. To this, we think, there can be no valid objection, on the score of right or power. It was not a delegation of the legislative function. In questions affecting private rights, the legislature must often act with reference to the implied assent to, or acquiesence in, its acts, by the party or parties interested. In questions affecting municipal

government, their action is often necessary to carry it into effect; and whether expressed upon the face of the law, or not, the question of the acceptance or rejection of a charter, or amended charter, is a, practical one, and necessarily involved in the passage or adoption of every such act. *Santo* v. *The State*, 2 Iowa, 203. In the *City of Patterson* v. *The Society*, &c., 4 Zabriskie, 343, it is held that a provision in a municipal charter, that the same shall not take effect until approved by a majority of the district incorporated, is not a delegation of legislative power, but is the mere question of the acceptance of a charter.

For the reasons above indicated, we think the act in question, is not liable to the objection that it was not passed into a law according to the forms of the constitution. It will not, therefore, be necessary for us to inquire further, whether so much only of the act, as provided for its taking effect on its acceptance by the city council, might not be held unconstitutional and void, and the remainder of the act permitted to stand in full force. Upon that branch of the subject, we will not do more than refer, for the rule of law, to a few authorities. *State* v. *Santo, supra ; Maize* v. *The State,* 4 Ind., 342 ; *Norris* v. *City of Boston,* 4 Metc., 288 ; *Fisher* v. *McGirr,* 1 Gray, 22 ; *Clark* v. *Ellis,* 2 Blackf., 10 ; Sedgwick Const. Law, 165-6, 489 ; *The People* v. *Reynolds,* 5 Gilman, 1 ; *Com.* v. *Judges, &c.,* 8 Barr., 391 ; *Savannah* v. *The State,* 4 Georg., 26.

IV.   The remaining objections made to the act are, that it is for an extension of the authority of the city over the plaintiff, and all persons living in the extended limits, without their consent; and that the act takes from the plaintiff his property for public use, without just compensation.

The power to create corporations for municipal purposes, was given to the general assembly by the constitution of 1846, (Art. 8, sec. 2), in force at the time of the incorporation of the city of Muscatine.

The right of the legislature to enact such law, is not made to depend upon the consent of the inhabitants, or proprietors

Morford v. Unger.

of the land, on which the proposed city or town is situated. If such consent were requisite, then the consent of each proprietor must be first obtained; because the consent of no majority, however large, would bind a minority, however small ; and the power of the legislature, in such a condition of things, would be merely that of effectuating the will of each individual proprietor.

If the legislature has the power to incorporate a town or city, the extension of the limits of such incorporation, and the bringing of additional land and people under the municipal authority, being an act of a like nature, depends for its authority on the same constitutional provisions. So, the power of imposing a local government upon a town or city, includes the power of ascertaining the extent of the corporation, and its just boundaries, as well as the powers to be vested in the local government. Among the powers deemed essential to the objects of the corporation, is that of levying such reasonable taxes upon the property within its limits, as may be necessary for such local purposes as the corporation is authorized to accomplish.

By the " act to amend the charter of the city of Muscatine," approved January 22, 1853, (Session Acts, 137), the city council are authorized to levy a tax of not exceeding one per centum, in any one year, upon the assessed value of the property in the city. By the act now in question, all the lands lying within the territory added to the city, not laid out into lots or out-lots, are not to be taxed otherwise than by the acre, according to the value of the same for agricultural, horticultural, mineral, or other purposes; but improvements thereon, it is provided, may be taxed at their full value. Sec. 5.

It is argued by the plaintiff that the extension of the limits of the city so as to include adjacent lands, without the consent of the owners, and the subjection of the same to the authority and taxing power of the city, is, in effect, taking private property for public use, without just compensation.

It has been held, in numerous instances, and the doctrine
Vol. VIII.—12

can now hardly be seriously questioned, that with respect to municipal corporations which exist only for public purposes, the legislature, under proper limitations, may change, modify, enlarge, restrain, or destroy them, securing the property of the corporation to the use of those for whom it was purchased. 3 Kent's Com., 358 ; *People* v. *Wren*, 4 Scam., 269 ; *Coles* v. *Madison Co.*, Breese, 120. The municipal corporation is the mere creature of the law. The town itself, in its material constituents, is the result of the voluntary act of the inhabitants. Where there is a town or city *de facto*, there can be no question of the power of the legislature to provide for it a local government, and to authorize local taxation for its support. The greater burden of taxation is compensated for in the greater advantages conferred by the municipal government. The consent of every individual to the authority of the local government is not deemed requisite, in order to subject him or his property to its jurisdiction, or is implied in the fact of his placing himself in a condition to require such local government.

If the legislature, independent of the question of taxation, may rightfully impose the authority of a local government on persons, who, by building in close proximity, have made a town *de facto*, it would seem hardly reasonable that the expense of such government should be borne by the county and state ; and as little reason, we think, can exist why the legislature may not require the local population to support by local taxation; the government provided for it.

All taxation may be said to involve the taking of private property for public use; and yet all property is held subject to the right of taxation by the legislature, or under its authority, either for general purposes, or in local subdivisions for local purposes. It has even been held that the legislature may, by general enactment, tax any given species of property, either private or corporate, to the value of the property itself, for that the power of taxation, whenever conceded to the legislature over any given subject, implies the power even

of destruction. *Armington* v. *The Town of Barnet, &c.,* 15 Vermt., 745; *McCulloch* v. *Maryland,* 4 Wheaton, 416.

Legitimate taxation, whether under the state or the municipal authority, is not the taking of private property for public use, without compensation, within the meaning of the constitution. The protection afforded to the citizen by the government, is usually conceded to be the just compensation referred to by the constitution, for all private property he is required to surrender to the public use in the shape of taxes. And it is only where an undue proportion of the burden of taxation is laid upon him, or when the power of local taxation is made to operate upon those, who, being out of the reach of the local benefits, ought not to be subject to the local tax, that there can be any plausible ground for alleging that property, taken for taxes authorized by law, is taken without just compensation.

The question where the proper line is to be drawn, between the legitimate exercise of the taxing power and an arbitrary appropriation of the property of an individual under the mask of this power, is discussed at length by MARSHALL C. J., in *Cheaney* v. *Hooser,* 9 B. Monroe, 330; and it is held by the court, that where there is no other constitutional restriction upon the power of taxation, securing equality and uniformity in the distribution of taxation, either general or local, the provision of the constitution which prohibits the taking of private property for public use without just compensation, furnishes the only available safeguard against legislation, which, in its operation, may result in the appropriation of the property of one for the benefit of many.

Conceding to the general assembly a wide range of discretion as to the objects of taxation, the kind of property to be made liable, and the extent of territory within which the local tax may operate, it is argued, in the opinion referred to, that there must be some limit to this legislative discretion; which, in the absence of any other criterion, is held to consist in the discrimination to be made, between what may reasonably be deemed a tax, for which a just compensation

is provided in the objects to which it is to be devoted, and that which is palpably not a tax, but which, under the form of a tax, is the taking of private property for public use, without just compensation.

If there be such a flagrant and palpable departure from equity, in the burden imposed ; if it be imposed for the benefit of others, or for purposes in which those objecting have no interest, and are, therefore, not bound to contribute, it is no matter in what form the power is exercised—whether in the unequal levy of the tax, or in the regulation of the boundaries of the local government, which results in subjecting the party unjustly to local taxes, it must be regarded as coming within the prohibition of the constitution designed to protect private rights against aggression, however made, and whether under the color of recognized power or not.

It is urged by the plaintiff, that his farm, which is sought to be brought within the jurisdiction of the city, is agricultural land; that it is one mile from the old boundary of the city, and the same distance from any lands laid out into city lots, or used or needed for city purposes ; that he can derive no benefit from the extension of the municipal government over him and his property ; and that the act subjecting him to taxation at the will of the city council, and for its benefit, is an appropriation of his private property for the use of the city, without any compensation or benefit accruing to him in return.

We have no doubt, as is held in *Cheaney* v. *Hooser, supra*, that if the owner of land adjoining a city or town, should lay the same off into lots, and invite purchasers and settlers to occupy it with dwellings, or otherwise, he could not object to a law extending the authority of the local government over him and his land so laid out and occupied. But if the case is that of vacant land, or a cultivated farm, occupied by the owner for agricultural purposes, and not required for either streets or houses, or other purposes of a town, and solely for the purpose of increasing its revenue, it is brought within the taxing power, by an enlargement

of the city limits, such an act, though on its face providing only for such extension of the city limits, is in reality nothing more than authority to the city, to tax the land to a certain distance outside of its limits; and is, in effect, the taking of private property without compensation. The force and effect, and obvious intent of the act is, to subject such outside lands to city taxation, without the pretext of extending the protection of the city over them, and when the power of the legislature over local regulations and government, furnishes no legitimate basis for the act.

In *Wells* v. *City of Weston*, 22 Missouri, 385, the supreme court of Missouri, while conceding to the legislature the uncontrolled power of taxation, subject only to the constitutional restriction, that "all property subject to taxation, shall be taxed in proportion to its value;" and conceding, also, the right to delegate to subordinate agencies, such as municipal corporations, the power of taxation, have denied to it, the power to tax arbitrarily the property of one citizen and give it to another ; and on this ground have held, that the legislature cannot authorize a municipal corporation to tax, for its own local purposes, land lying beyond the corporation limits.

And so it is held by the court of appeals of Kentucky, in conformity with the principles laid down in *Cheaney* v. *Hooser*, *supra*, that although the legislature has power to extend the limits of cities and towns, and include adjacent agricultural lands, without the consent of the owner, yet the corporation authorities cannot tax such property as town property, and subject it to the city burdens, without the consent of the owner, until it shall be laid off into lots and used as town property. The decision is made distinctly on the ground that the act of the legislature was an invasion of private property, contrary to the principles of our constitutional law, under color of the power of taxation. *City of Covington* v. *Southgate*, 15 B. Monroe, 491.

In the framework and operation of our government, says Mr. SEDGWICK, the protection of vested rights, is the great

practical object sought to be obtained. The legislative power being the most formidable, our system chiefly aims to guard the citizen against the legislature—to protect him against the power of a majority, taking the shape of an unjust law. The unjust action of government with us, is most likely to take the shape of attacks upon rights of property. All government, indeed, resolves itself into the protection of life, liberty and property. Life and liberty, in our fortunate condition, are, however, little likely to be injuriously affected by the action of the body politic. Property is very differently situated. It is, therefore, of the highest moment, if possible, to obtain a clear idea of the nature and extent of the protection which guards our rights of property from attack, under color of law—to determine, in other words, what is a *vested right.*   *   *   The questions connected with taxation are every day becoming of more and more pressing importance. The taxing authority is, after all, but one arm of that tremendous power of *eminent domain*, at the foot of which, so far as uncontrolled, every citizen lies prostrate; and the consequences of the earlier decisions, leaving this engine in the hands of unrestrained legislative authority, seems to have awakened that conservative jealousy of power, which never lies long dormant in the breast of our people. Certain it is, that the more recent constitutions, and the more recent judicial decisions, show a disposition not to abandon the taxing power to the often ill-regulated and despotic will of our fluctuating and hasty legislation. Sedgwick on State and Constitutional Law, 673.

The extension of the limits of a city or town, so as to include its actual enlargement, as manifested by houses and population, is to be deemed a legitimate exercise of legislative power. An indefinite or unreasonable extension, so as to embrace lands and farms at a distance from the local government, does not rest upon the same authority. And although it may be a delicate, as well as a difficult, duty for the judiciary to interpose, we have no doubt but strictly there

are limits beyond which the legislative discretion cannot go. It is not every case of injustice or oppression which may be reached; and it is not every case which will authorize a judicial tribunal to inquire into the minute operation of laws imposing taxes, or defining the boundaries of local jurisdictions. The extension of the limits of the local authority, may in some cases be greater than is necessary to include the adjacent population, or territory laid out into city lots, without a case being presented, in which the courts would be called upon to apply a nice or exact scrutiny as to its practical operation. It must be a case of flagrant injustice and palpable wrong, amounting to the taking of private property, without such compensation in return as the tax-payer is at liberty to consider a fair equivalent for the tax.

In the case of *City of Covington* v. *Southgate*, 15 B. Monroe, 498, it was held by the court, that as Southgate had made no town upon his land, and desired none; and as there appeared no legitimate necessity to justify the extension of the city boundary, without his consent, it presented a case of taxation for the benefit of others, and was under the color of taxation, an appropriation of private property without compensation.

We think the case made by the present plaintiff, is quite as strong as the one cited. His land is situated too far from the city of Muscatine, to be deemed, in any just sense, a part of it. He does not desire to lay it off into city lots, but desires to use it as farming land. It is idle to say that the protection afforded by the city authority, or the privilege of voting at the city elections, furnishes a just equivalent for the burdens imposed upon him in the shape of taxes, by the city; and the attempt to extend its jurisdiction over him and his property, must be regarded as an attempt to take private property for public use, and within the prohibitory clause of the constitution.

The restriction in the fifth section of the act, "that the lands lying within the territory brought into the city, not laid out into lots and out-lots, shall not be assessed or

taxed otherwise than by the acre, according to its value for agricultural, horticultural, mining, and other purposes," does not relieve the act of its objectionable features, or strengthen, in any degree, the case of the defendant. It would seem to indicate, on the other hand, that the city was seeking to bring within its power, for the purpose of taxation, land used for farming purposes, and not needed for city lots, without any expectation of rendering a just equivalent for the burdens it designed to impose. The difficulty is in no manner obviated by the suggestion, that the city only proposes to tax the land of the plaintiff by the acre, as agricultural lands, and not as city lots. It can make little difference to the plaintiff, in what manner his property is taxed. Whether as city lots, or by the acre, as agricultural land. It is the power to tax in any shape to which he objects. It might as well be attempted to call the tax itself, by some less objectionable name.

Judgment reversed.