Fulton v. The City of Davenport.

## FULTON v. THE CITY OF DAVENPORT *et al.*

1. **Taxation:** MUNICIPAL CORPORATIONS: EXTENSIONS. While the courts will not interpose to prevent the mere extension of the boundaries of a municipal corporation, they will limit the exercise of the taxing power, as nearly as practicable to the line where it ceases to be for purposes beneficial to the proprietor in a municipal point of view.

2. ―― WHEN TAXES MAY BE ASSESSED. When the owners of property embraced within the corporate limits by extensions of the boundaries thereof, cause the same to be laid out into town or city lots with streets and alleys, and platted as such, it becomes subject to municipal taxation for all proper municipal purposes.

3. ―― GENERAL RULE. Where property situated within the limits of a municipal corporation has never been dedicated as town or city property by being laid out and platted as such; but is in such close proximity to the settled and improved parts of the town, that the corporate authorities .cannot open and improve streets and alleys, and extend to the inhabitants the usual police regulations and advantages, without incidentally benefiting the proprietors of such property in their personal privileges and accommodations, or in the enhancement of their property, the power to levy municipal taxes thereon arises; but it should be exercised with great circumspection.

*Appeal from Scott District Court.*

TUESDAY, DECEMBER 6.

THIS case again presents for determination the question, how far a corporate town or city may tax the real property situated within her boundary limits, for general municipal purposes. Below, the case made by the pleadings was referred. The following is the referee's report of the facts:

"1st. That on the trial of this cause, the said parties to this suit entered into the following stipulation in writing, to wit: 'It is admitted, agreed and understood between the parties to this suit that all the allegations of said petition and answer are to be taken as proved, except those relating to the fact as to whether the said real estate is or was properly assessed as city property, and liable to a city tax for said year 1862, and whether the same is essentially farming lands, and not by law liable to be assessed as city property.'

"2d. Said land is a tract about eighty rods long, north and south, by about thirty rods wide, east and west, and contains about sixteen acres of land, and is situate about one mile from the present western boundary of the city, and from the eastern boundary of the city two miles, lacking thirty rods. From the northern boundary of said city it is a half a mile and eight hundred feet. From the southern boundary of said land to the city is seven-eighths of a mile.

"3d. That said land has for the last eleven years or more been used for farming and agricultural purposes, and no other; has never been laid off into city or town lots, and has not a road or street opened to or touching it either from said city or elsewhere.

"4th. Immediately south of this land there are no buildings till you come to the residence of Mr. Gillett (the old Iowa college), which is about ninety rods. On the west there are three frame buildings opposite the south part of the land. The next nearest building on the west is about one-quarter of a mile. Immediately north of this land there are no buildings in sight of the city, or until you come near Dutch Creek. Northwestward there are some five or six buildings, where Adam Noel lives, scattered along the road. On Harrison street there is Noel's and one or two other small buildings west of Noel's. On the east there are are about six buildings some twenty-three rods from this land. Northwest of this land the city is pretty well built up. Out back of Burrow's place (west of this land), there is a settlement called Hamburg, and some scattered over a large space west, about three-fourths of a mile from this land. Northeast, in the vicinity of North Davenport, the city is pretty well built up. South of said land the city is thickly settled, after you get below the bluff. An east and west line, drawn through the geographical centre of the city, would come about one rod south of the southern line of this land. The bulk of the city built up, that is, a very large portion of the built up part of the city, lies south and east of said line last spoken of.

"5th. That although said city is built up at some distance from the land, both east and west of it, further north than said land, yet the city in the vicinity or near this land is not built up or improved in the way of streets, &c., and never has been."

Upon these facts the referee reported his conclusions of law, to the effect that the land in question was not taxable for general city purposes. His report was subsequently ratified by the court, and a decree accordingly entered,

perpetually enjóining the collection of said tax for the purposes aforesaid. The defendants appeal.

*Shorey* for the appellants.

*Fulton pro se.* ·

LOWE, J.—For a few years prior to the great pecuniary revulsion of 1857 and 1858, the immigration to this State was

**1. TAXATION : municipal corporations: extensions.** heavy, and the growth and improvement of our river towns, particularly, were rapid, not to say marvelous, the population, in some instances, flowing over and beyond their chartered limits. Upon application, the legislature .enlarged their corporate boundaries, taking in very much more territory than was needed. for immediate population and building purposes; in view, perhaps, of prospective enlargement of the same. The power to do so has been recognized by this court on two former occasions, in the cases of *Morford* v. *Unger,* 8 Iowa, 82, and *Langworthy* v. *City of Dubuque,* 10 Iowa, 271. In the latter case, the court held upon this subject, after showing that such extension was no infringement of the Constitution, by taking private property for public use; "that in all such cases, while the courts will not interfere with the boundary limits, for the reason that mere extension, without the municipal imposition of taxation, is not in itself detrimental; yet that they will control and limit the taxing power, whenever practicable, to that point or line, where it ceases to operate beneficially to the proprietor in a municipal point of view."

The history of these new extensions shows that they embrace more or less farming, grazing, timber or mineral

**2. —— When taxes may be assessed.** lands, already being used and occupied for such purposes. And after they are taken within the corporate limits of the town, the proprietors thereof in the main, continue their use and occupancy as

before. Some of them, however, occupying a greater or less distance from the old boundary line, finding themselves within, and located upon the new extension, laid off a part or all of their lands into town lots, had the same surveyed, platted, and duly recorded, as an addition to the old or original town site. This dedication of their land to a new object, impresses it at once with a new character, namely, that of town or corporate property in its legal and recognized sense and acceptation. As such it is bought and sold, under the new description given to it on the recorded plat. The legal title to the streets, alleys, and other public grounds designated and dedicated upon the plat as easements, vests in the corporation whose jurisdiction over the same at once attaches. The owners of these lots, whether they be the original proprietors or purchasers under them; by their act of dedication and purchase of such lots as town property, on a plat annexed to and made a part of the old corporation, are estopped from denying that they are corporate property in the meaning of the law, and as such subject to the same burdens and benefits of all other town property. It follows, that wherever this new addition or town plat may be locally situated (if within the corporate limits), whether adjoining the old town plat, or at a greater or less distance therefrom, the power of the corporation to tax it for general municipal purposes at once arises; and if after it thus attaches, it should be improvidentially or unwisely exercised, it is not a grievance which this court can correct. There should be, and usually is, a local tribunal, to which the complaining party may appeal for the correction and redress of unequal or excessive taxations, or other irregular exercise of that power. It is only where there is a lack of power to tax at all, that the courts will interfere, as we have already fully explained in the case of *Macklott* v. *The City of Davenport, ante.*

Fulton v. The City of Davenport.

We have thus seen when, and under what circumstances, a corporation may tax property situated upon the new 3. —— General rule. extension; limiting its exercise so far, to that description of property, which has been laid off as town property, and annexed by the act of dedication to the old corporations. There may be isolated additions located at different points within the corporate bounds, entirely disconnected as between themselves, and also from the old town site, yet over which the city corporation may legitimately exercise its police jurisdiction, for the reasons which we have already stated. But between these several new town plats, and between them and the old town plat, there are other lands used for agriculture, horticulture, grazing, mining and other purposes, the proprietors of which have done no act to change the character or stamp their lands with the impress and constituents of corporate property. And the question arises whether the city may tax for corporate purposes these lands also, and if so, where is the proper limit to which the power should be confined? Practically, this is a difficult question, and not readily to be answered.

Unquestionably, the main line of division is, that which distinguishes property dedicated to corporate purposes, and that which is not so dedicated, the power terminating as a general thing with the former. Still it will hardly do to limit the power invariably to that line, although we know of no right or power, by virtue of which any man can be compelled to divide up, plat and record his land as town property, nor can he be compelled to part with his land by sale or otherwise, except when the public may need the same for streets and highways, when it may be appropriated against his will, due compensation being made therefor. Subject to this right of eminent domain, he may hold his premises in that form and use it in that

manner which may best accord with his own pleasure and taste. If he does so, and happens to be situated where he is surrounded by a town or city, which is built up and improved all around him, and where the city cannot grade and improve its streets, erect its public works, extend the protection afforded by its police regulations to its citizens proper, without at the same time, whether it wills it or not, giving him the full benefit of all these, and greatly enhancing his property; then in all such cases the power to tax clearly arises, and may be exercised whether the proprietor has dedicated and changed his land into corporate property or not, by laying it off into town lots. And this, too, upon the plain principles of justice and the exigencies of the case. We say, upon the principles of justice, because he gets the same equivalent in kind and character that other citizens do for the taxes they pay, and who otherwise would be taxed for his benefit. It would be indeed somewhat anomalous, and certainly against the genius and progress of the age, not to say those principles of equality and fair play, which should and do in a reasonable degree, as we think, mark the character of our different grades or systems of polity in this country, to allow one man, because of his superior wealth and ability to do so, to occupy a princely estate, embracing, it may be, a hundred or more acres of land, in the heart of one of our cities, enjoy all the varied benefits and privileges afforded by the local government, and share none of its burdens. This, we suppose, will hardly be permitted.

But the case we have just put, is a clear and perhaps a strong case, where the power to tax undedicated town property, and existing in its original condition, may be legitimately exercised by the corporate authorities. But there may be other pieces of property, the power to tax which would not be so obvious and clear, but which, on account

of their relative position to the growing and improved parts of the town, and partaking more or less of its bene fits, are liable to taxation. And, so again, there may be other property of this class, the power to tax which would be still less obvious and clear, until you reach a point where the power to tax would cease altogether. Now, on the other hand, there are some descriptions of these farm- ing lands, to tax which, for city purposes, would be clearly oppressive and unjust, and would come within the consti- tutional prohibition of taking private property for public use, without compensation. An illustration of this class will be found in the case of *Morford* v. *Unger*, 8 Iowa, *supra*. But it will readily occur to any one that there will be other property of this class, where not to tax will be less obvious and clear, than in that case, and so on till you reach a point where the right to tax would commence. Until, therefore, we reach this line, or near to this line, where the power to tax ends on the one hand, and begins on the other, we may determine the question of power with reference to some rule or principle reasonably satis- factory. But when the question of taxation arises upon property lying along or near this mysterious line, it pre- sents a case of great practical difficulty. Yet such is the condition of things in regard to our towns and cities in this State, that the jurisdiction of the courts is invoked to solve the same, and to define just how far the several towns may tax this kind of property for corporate pur- poses. Difficult as the task will be, it is apparent that every such case will have to be determined upon its own peculiar circumstances, without regard to any definite or fixed rule, and hence, doubtless, the decision in some instances will appear quite arbitrary, and, perhaps, unsat- isfactory. We have had already to encounter one of these difficulties in the case of *Langworthy* v. *The City of Dubuque*,

16 Iowa, *supra;* especially that portion of the property which constituted parts of mineral lots 207 and 316, situated near Eagle Point avenue. In sustaining the right to tax these lots, we felt then as we do now, that it was carrying the power to tax this kind of property to its utmost verge, and beyond which it should not go.

But the rule which we would deduce on this subject, and under which a large majority of cases might, as it seems to us, be determined, is this: when the proprietors of undedicated town property, being locally within the corporate limits, hold such close proximity to the settled and improved parts of the town, that the corporate authorities cannot open and improve its streets and alleys, and extend to the inhabitants thereof, its usual police regulations and advantages, without incidentally benefiting such proprietors in their personal privileges and accommodations, or in the enhancement of their property, then the power to tax the same arises; but in its exercise great care and circumspection should be observed, lest, perchance, injustice and oppression may ensue.

Now, applying this rule to the property involved in this controversy, in the light of the facts and circumstances above reported to us by the referee, we cannot be at a loss where to place this property, and to hold at once, that locally it occupies no such attitude towards the improved parts of the town, that it can legally be taxed for municipal objects, and the judgment below, therefore, will be affirmed.

We only add, in conclusion, that where a city or town is erected into a road or school district, corresponding, territorily, with the limits of the new extension, that all the property therein, without distinction, will be taxable for these objects.

Affirmed.