Buell v. Ball.

## BUELL v. BALL, Marshal, &c.

1. Taxes: MUNICIPAL CORPORATIONS: AGRICULTURAL LANDS. The fact that lands are embraced within the corporate limits of a municipal corporation, as defined by the original charter, does not confer upon the corporation the power to levy taxes thereon for municipal purposes, regardless of their situation in other respects, or the use made of them.

2. —— ESTOPPEL. The fact that the owner of agricultural lands within the limits of a municipal corporation asked for and aided in procuring the original charter or act of incorporation, does not affect the right of such corporation to levy taxes on such lands.

3. —— PAYMENT OF TAXES. The payment for several years of municipal taxes levied upon agricultural lands does not estop the owner of his right to challenge the legality of such levy.

4. —— REPLEVIN. When there is a want of authority to levy the tax, the owner may replevy property seized by an officer for the payment of the same: *aliter* when the authority exists but is irregularly exercised.

5. —— SIDEWALK: DESCRIPTION. The sufficiency of a description of property in the levy of a sidewalk tax considered and determined.

6. —— LOT: DEFINITION. The term "lot" applies to any portion, piece or division of land, and is not limited to parcels of land laid out into blocks and lots regularly numbered and platted.

7. —— "PAVE AND REPAIR." The charter authorized a municipal corporation to require the owner of lots "to pave and repair one-half the width of the streets contiguous to the respective lots:" *Held* that the word *pave* as used in this connection included all things necessary to make a level and convenient surface for horses, carriages and foot passengers.

8. —— ASSESSMENT AND EXPENSE. The charter authorized the municipal corporation "to cause the streets and alleys of the city to be paved and the pavements to be repaired," and further authorized it to "require the owners of lots adjacent to which it is done, to pave and repair one-half in width contiguous to their respective lots; and in case of neglect, after a reasonable time named in the order, the same may be done by the city, and the expenses may be assessed on said lots, which shall have the effect of a tax levied thereon, and the same may be sold therefor, as a tax, subject to the same right of redemption;" an ordinance was passed ordering a certain walk to be constructed within a time named, and directing the street commissioner to erect it, if not built within the time named, and to assess the cost thereof to the respective owners; the walk was not built by the owner and was built by the street commissioner, and the cost assessed as ordered by the ordinance: *Held,*

Buell v. Ball.

that an assessment of the expenses of constructing the walk, by the council, and the giving of notice thereof, were not necessary.

9. —— REPLEVIN: FRAUD IN OBTAINING PASSAGE OF ORDINANCE. In an action of replevin against an officer to recover possession of property seized for the payment of an assessment for building a sidewalk, the owner will not be permitted to contest the tax by showing that the ordinance was procured to be passed by fraud, or that the walk was of no advantage to him, or was not made at his request.

10. —— LIEN UPON LOT ALONE. An assessment made for building a sidewalk, under a charter authorizing the same to be built by the corporation, if the owner of the contiguous lots neglects or refuses to do it when required, the expenses thereof to be assessed against said lots, is a lien upon the lots alone, and is not a personal liability of the owner for the payment of which personal property may be seized.

11. —— CONSTITUTIONAL LAW. As to the power of the legislature to make the owner of the property personally liable for said assessments, *query?*

*Appeal from Clinton District Court.*

TUESDAY, APRIL 17.

THIS is an action of replevin brought by the plaintiff, to recover certain articles of personal property from the defendant, seized by him as marshal of Lyons city, for the payment of certain taxes. The taxes for the payment of which the property was seized, accrue upon three different bases: *First*, city and engine tax upon certain agricultural lands; *Second*, sidewalk tax upon certain property; and *Third*, grading tax upon other property.

The cause was tried to the court, certain facts found and judgment rendered for the return of the property, or at defendant's election, for $788.09, the amount of the taxes, and for costs. The plaintiff appeals.

*A. R. Cotton* for the appellant.

I. The court below erred in holding that these lands were taxable, without reference to their situation or use,

because they were situated within the original boundary of the city. *Langworthy* v. *The City of Dubuque*, 16 Iowa, 273.

II. The court also erred in holding that the legality of the assessment of the tax on these lands cannot be investigated in this action. The warrant could have no more force than though against lands outside the city limits, and it could as well be declared a justification in the latter case. If it be true that the law incorporating Lyons cannot confer a right to tax these lands, the marshal is bound to know the law. The tax list also shows on its face a very unusual assessment for city taxes, that is, an assessment of many acres of land by government description. The marshal also testifies that the appellant notified him before levy that he objected to the legality of the tax on his farm. *Macklot* v. *The City of Davenport*, 17 Iowa, 379.

III. The description of the fourteen acres and the twenty acres is so vague as to render the assessment void. The list was, in that respect, void on its face, and, therefore, no justification. Blackw. Tax Tit., 155; *Richardson* v. *The State*, 5 Black., 51.

IV. The court erred in deciding that the marshal under warrants for grading and sidewalk tax could distrain personal property, for two reasons:

1st. The city charter in authorizing the council to cause the streets to be paved and pavement repaired provides that "the expense may be assessed on such lots, which shall have the effect of a tax levied thereon, and they may be sold therefore as for a tax subject to the same right of redemption." It is under this law that warrants 5 and 6 were made. The only remedy given is *in rem* against the lots. The law does not authorize an assessment *against the owner*. See *Brown* v. *City of Joliet*, 22 Ill., 123.

2d. The name of the owner of the ground claimed to be assessed *is not mentioned* in either of the warrants, and if

the charter could be construed to authorize an assessment against the owner so as to create a personal liability under which his property could be distrained, such course has not been pursued in this case. There has been no listing in these cases against the appellant, no assessment against him, and, therefore, a personal liability does not exist. These tax lists and warrants do not command the marshal to make any assessment.

V. The court erred in excluding the evidence offered by the plaintiff in relation to the sidewalk and grading tax, the same being material to issues relating thereto, and showing that no notice of either assessment had been given. Such notice the law requires to precede any claim of justification under a tax warrant.

VI. This property is not a "lot" in any meaning of that word, as defined in *The Burlington and Missouri River Railroad Company* v. *Spearman*, 12 Iowa, 115. In that case the railroad company owned a certain piece of ground which had fixed boundaries, and the court held it might be denominated a lot; in this case the ground extends to the west without limit, and is not a distinct piece of ground.

VII. The so-called sidewalk is much of it a bridge, and cannot be included under the term pavement.

VIII. The charter of Lyons does not authorize the council to require the owners of lots to grade any part of the adjacent street. This right is not mentioned among the powers of the council, and if this right does not exist the warrant cannot justify.

*Ellis Brothers* for the appellee.

I. The city council of Lyons is authorized by the charter to levy taxes "on the value of *all* property within the

city which is liable for State and county taxes, including improvements on real property." This action cannot be maintained if this act is constitutional. *Macklot* v. *The City of Davenport,* 17 Iowa, 379.

II. The boundaries of the city have not been extended for the purpose of bringing this land under municipal taxation. It is within the original limits as fixed by the original charter, enacted with his knowledge and approval. In this respect it differs from *Morford* v. *Unger,* 7 Iowa, 82, and *Fulton* v. *The City of Davenport,* 17 Id., 404.

III. If the taxes are justly due, a vague description will not exonerate the appellant from payment, nor render the tax list void under which his property was seized to enforce payment. The case of *The Burlington and Missouri Railroad Company* v. *Spearman and the City of Mount Pleasant,* 12 Iowa, 112, presented a stronger objection because of vague description, than is presented by the appellant. In that case, the land itself was offered for sale, but the court refused to restrain the sale, although the description was vague and uncertain, and the same rule will apply equally well in this case.

IV. While there is no provision in the charter for an assessment directly against the owner, it provides for the sale of the real estate only when " no personal property can be found." The rule applies as in the levy of ordinary city taxes.

V. It is alleged that the passage of the ordinance was procured by fraud, committed in altering a petition to the council asking its passage.

So far as relates to the legal question involved, it can make no difference whether the petition was so altered or not, for no petition is necessary to authorize the council to make an order or pass an ordinance providing for building a sidewalk. The charter does not require it; and that question cannot be raised in this case.

Buell v. Ball.

COLE, J. — The plaintiff was, and still is, the owner of about two hundred and ten acres of land, lying in one body, and within the original limits of Lyons City, as defined by the act of the legislature incorporating it. This land was taxed by the city authorities in 1860 and 1861, for city and engine tax, under the following descriptions, viz.: "S. E. ¼ of N. W. ¼, Sec. 30, T. 82, R. 7, 40 acres;" "N. E. ¼ of S. W. ¼, Sec. 30, T. 82, R. 7, 40 acres;" "N. W. ¼ of S. E. ¼, Sec. 30, T. 82, R. 7, 40 acres;" "N. part, S. E. ¼ of S. W. ¼, Sec. 30, T. 82, R. 7, 28 acres;" "N. part, S. W. ¼, of S. E. ¼, Sec. 30, T. 82, R. 7, 28 acres;" "all that portion of land, not sold, supposed to be 14 acres, more or less, in S. E. ¼, of S. E. ¼, Sec. 30, T. 82, R. 7;" and "all that portion of land, not sold, supposed to be 20 acres, more or less, in N. E. ¼, of S. E. ¼, Sec. 30, T. 82, R. 7."

*1. TAXES: municipal corporations: agricultural lands.*

The first three descriptions have not been laid off into city lots, nor do they, or either of them, adjoin any land which has been so laid off. They are from about one-quarter to three-quarters of a mile from any city lots. But the forty acres immediately west of the last one of the three descriptions, was subdivided into eight or nine lots several years ago, though none of them have ever been occupied, and efforts to consolidate again have been made.

The next two descriptions lay east of the two last named of the three, and between them and Pearl street. All or nearly all of the original city limits east of Pearl street has been laid off into city lots, and that portion of the city immediately east is quite thickly settled. The city lots fronting on Pearl street and immediately opposite these two next descriptions, are built upon and occupied, and are regarded as desirable locations.

The last two of the descriptions as taxed, embraces what remains of their respective forties which has not been laid out into city lots by plaintiff, or sold by him to others in

lots of larger area, and two or more streets run through what remains in each description. All of these seven descriptions are contiguous, and have been occupied, cultivated and used by plaintiff for agricultural purposes for many years.

Upon these facts, or rather rejecting them, the District Court *held*, "that as the lands which the plaintiff claims to be farm lands were included in the original limits fixed by the act incorporating Lyons city, that they were liable to taxation by the council of said city for municipal purposes, regardless of their situation in other respects, or of the use made of them. And further, that the legality of the assessment of taxes on the same cannot be investigated in an action of replevin against the marshal."

In thus holding, we think the District Court erred. It is true, that in every case involving the rightfulness of city taxes upon the points here made, which has come before this court, the property taxed was situated outside of the original limits of the cities levying the tax, but within the extended limits. See *Morford* v. *Unger*, 8 Iowa, 82; *Butler* v. *City of Muscatine*, 11 Id., 433; *The Burlington and Missouri River Railroad Company* v. *Spearman et al.*, 12 Id., 112; *Langworthy* v. *The City of Dubuque*, 13 Id., 86; *Same* v. *Same*, 16 Id., 271; and *Fulton* v. *City of Davenport*, 17 Id., 405. So also in *Cheany* v. *Hooser*, 9 B. Monr., 330; *City of Covington* v. *Southgate*, 15 Id., 491.

The ground upon which courts interfere in such case is, that private property shall not be taken for public use without just compensation. It is the *fact* of taking without compensation, and not the *time* or *manner* which constitutes the infraction of the constitutional inhibition. The *fact* may be as effectually accomplished by an original incorporation, as by an amendment; and the constitutional guaranty would be of little avail, if it could be avoided by mere *form*. It is the duty of courts to protect the

*substance* of every *right*, and judges should be "wise as serpents and harmless as doves" in discovering every device and removing every *form* which effectuates or clothes a *wrong*.

The allegation (even if proved), that plaintiff asked for and aided in procuring the original charter or act of incor-

2. — estop-pel. poration, could have no legal effect in this case; for, whether he assented or objected, he cannot avail as against the declared legislative will, and the right of the legislature to enact the original charter, did not depend on the assent of plaintiff, or the proprietors or inhabitants of the corporate territory. *Morford* v. *Unger*, and other · cases, *supra*. Nor could the allegation (if

3. —pay-ment of taxes. proved), that plaintiff had, for several years, paid similar taxes upon the same property, defeat his right of action now, or operate by way of estoppel. *Morford* v. *Unger*, *supra*.

The right to test the legality of, or the constitutional and lawful right to levy the taxes, by action of replevin

4. — re-plevin. against the marshal, was fully considered and determined by this court, in the case of *Macklot* v. *The City of Davenport*, 17 Iowa, 379. Where there is want of authority to levy the tax, he may replevy; *aliter*, where there is authority irregularly exercised.

The grounds upon which we place our decision as to the lands we hold liable, and those we hold not liable to the tax, are sufficiently stated in the cases referred to *supra*. We hold, upon the facts proved, that the first three descriptions set forth above, they being the three whole forties, are not liable to the tax; the other four descriptions, they being the parts of the several forties, are liable.

II. As to the sidewalk tax, there are substantially three objections made by the plaintiffs:

*First.* The description of the real estate is void for uncertainty; it is as follows: "Commencing at Fourth avenue,

west side of Seventh street, in Buell's addition, and running south 480 feet; property not laid out, but corresponding to block 3, range 7, Buell's addition." A recognizedly correct map of Lyons city is before us as part of the evidence in this case, and from it we see that block 3, range 7, lies immediately west of where the walk was in fact built, and is four hundred feet long; and the width of Third avenue, which is projected but not yet opened through where the walk was built, is eighty feet, making the four hundred and eighty feet. The description itself is concise and reasonably certain, and with the aid of the map is very perspicuous and definite. This objection is not well founded. See *Burlington & Missouri River Railroad Company* v. *Spearman*, &c., *supra*.

*Second*. It is objected that this piece of land was not a "lot;" that the city only has authority to "require owners

<small>6. —— lot: definition.</small> of lots to pave and repair one-half in width of the streets contiguous to their respective lots;" and that "pave and repair" does not mean to build a sidewalk. The testimony shows that the sidewalk was six feet wide and built of two inch plank on stringers, and that a portion of it was elevated on bents some fourteen feet, and had a side railing to protect persons from falling off.

The word "lot," means any portion, piece or division of land (Web. Dic., "Lot"), and is just as applicable to

<small>7. —— "pave and repair."</small> the piece of land described, as if it had been duly platted and recorded as lot one, in block one, or any other number, or as to any other lot in the city. So with the word "pave;" while its primary meaning is to lay or cover with stone or brick, so as to make a level or convenient surface for horses, carriages or foot passengers, it also means to prepare a passage. Web. Dic., "Pave." Could it be reasonably contended that the authority to require the owner to pave the street in front of his lot, only gave the power to require him to lay down the

paving stones after the surface was prepared and made ready for them? If he may be required to prepare the surface to receive the paving stones, may he not also be required to remove an obstacle, such as a root, a stump, or a tree? And if so, may he not be required to do any excavation or filling necessary to prepare the surface? We think the word " pave " is used in that connection as a comprehensive ultimate term, and that it includes all things necessary " to make a level and convenient surface for horses, carriages and foot passengers," of any convenient, common or practical material.

*Third.* It is further objected that there was no petition for the ordinance to build the sidewalk to Fourth avenue, for that by fraud, "Third" was stricken out and "Fourth" inserted after the petition was signed; that the council never assessed the expense, nor was due notice of any such assessment ever given; nor was the sidewalk of any advantage to the plaintiff, nor done at his request.

*s. —— assessment of expenses.*

The city charter provides, sections 31–35, that the marshal give thirty days' notice of the assessment, levy and rate of tax, and that during that time any person may appear before the council and have errors corrected; that the mayor shall issue his warrant and the collector may demand the tax, and if not paid, may distrain personal property and sell the same, and that the taxes on real property are a lien thereon, and it may be sold therefor. Much of the argument of counsel has been devoted to these sections and their construction, as applicable to this sidewalk tax. But in our view, they have no application whatever to it; they relate to the general and special revenue taxes of the city, but have no relevancy to improvement taxes, such as for paving, grading, &c.

Section nineteen of the charter which defines the powers conferred upon the city, provides among other things as

follows : "Fourteenth, to cause the streets and alleys of the city to be paved, and the pavements to be repaired, and in that end it may require the owners of lots adjacent to which it is to be done, to pave and repair one-half in width of the street, contiguous to their respective lots, and in case of ·neglect after a reasonable time named in the order, the same may be done by the city, and the expenses may be assessed on such lots, which shall have the effect of a tax levied thereon, and they may be sold therefor, as for a tax, subject to the same right of redemption."

An ordinance was passed under this provision of the charter requiring owners along where the sidewalk in controversy is situated, to build sidewalks of certain materials specified, within ten days, and if not built, the street commissioner was directed to build it and assess the cost thereof to the respective lots. The walk was not built by the owner, and the street commissioner did build it and assessed two hundred and fifty-three dollars and thirty cents to the lot in question. Under these circumstances, it is of course immaterial whether the council ever assessed the expense or gave notice thereof, for they were not required to do either. Nor can the plaintiff in an action of replevin against the marshal, be permitted to contest the tax by showing that the ordinance was procured to be passed by fraud, or that the walk was of no advantage to plaintiff or was not done at ·his request.

> 9. —— RE-PLEVIN: fraud in obtaining passage of an ordinance.

But it is further objected by plaintiff, that under the 14th subdivision of section 19 of the charter, *supra*, the lot alone is liable for the assessment upon it, and that personal property of the owner cannot be levied upon or sold to satisfy such tax. And in this view we concur. The previous sections referred to (§ 31, *et seq.*) relate alone to the general or special revenue of the city, and hence we cannot find in them any authority for seizing

> 10. —— lien upon lot alone.

personal property to satisfy an assessment for improvement. We must look, then, to subdivision 14 for the authority, and that provides that the expenses assessed "shall have the effect of a tax levied thereon, and it may be sold as for a tax, subject to the same right of redemption." The effect of the assessment is to create a lien on the lot, and for which it may be sold; but no express authority is given to seize or sell the personal property of the owner for such assessment. In the absence of such express authority, no such power will be inferred.

There is a marked difference and clear distinction between an ordinary revenue tax and an assessment for an improvement.

The owner of real property is, or may be, made personally liable for the ordinary and special revenue taxes levied 11. —— constitutional thereon; and it seems to have held that it is competent for the legislature to tax any given species of property to the entire value of the property itself. *Armington* v. *The Town of Barnet, &c.,* 15 Verm., 745; *McCulloch* v. *Maryland,* 4 Wheat., 316. But is it competent for the legislature to provide for improvements upon the property of another against his will, or without his consent, and make him personally liable beyond the value of the property, or personally liable to any extent therefore. See *Childs* v. *Showers,* 18 Iowa, where it was held that it could not be done as in favor of an individual, but whether it can be done as in favor of the public, is perhaps a different question and one upon which we express no opinion.

III. The tax or assessment for grading certain other lots rests upon the same provisions and principles as the sidewalk tax just disposed of. Under the city charter there is no power conferred to seize the personal property of the owner for such taxes or assessments.

It follows, therefore, that the judgment must be reversed, and the cause remanded for retrial upon the basis indicated in this opinion.

Reversed.