## Bradshaw v. The City of Omaha.

1. JURISDICTION OVER CONSTITUTIONAL QUESTIONS. The courts have no jurisdiction of matters which are committed to the discretion of the legislature.

2. ——. Nor may they declare an act unconstitutional, because the legislature in passing it, was influenced by unworthy motives.

3. ——: *Municipal corporations.* The legislature may increase or restrict the powers, extend or contract the limits, of cities, and the courts cannot interfere.

4. ——: *Municipal taxes.* The courts have jurisdiction to inquire and determine whether lands brought by the legislature within the limits of a city, are justly subjected to taxes levied by it for its support; because that is a question of property and private right.

5. TAXATION: *Constitutional provisions.* There is in the constitution of Nebraska no express provision, limiting the legislative power of imposing, or distributing, or enforcing taxes.

6. ——: ——. By the general provisions thereof the exercise of that power when unjustly exercised, may be restrained.

7. ——: *City and State.* Whether a city can be authorized to tax property not justly subject thereto, is a question very different from that of the validity of State taxes:

     1. The relations of the citizen to the State and to a particular city, are different.

     2. All citizens are compensated for what, in the form of taxes, they pay to support the State. This may not be true of taxes levied and exacted by a city.

     3. State taxes are levied for political, city taxes for administrative purposes.

8. ——: *Compensation.* The constitutional provision that private property shall not be taken for public use without just compensation, implies that it shall not be taken for private use at all; either with, or without compensation. This is the same as the axiom of natural justice, that the State shall not take A's property, and give it to B.

9. ——: *City.* The nature of the act of taking one man's property and giving it to another, is not modified by the circumstance, that the party to whom it is given is a city.

BRADSHAW *v.* THE CITY OF OMAHA.

10. ——: *Public object.* When a city seeks to take private property for its use, whether under the form of taxes or otherwise, the object for which it is taken must be a matter of public advantage.

11. ——: *Tests.* If lands have been divided into town lots, and purchasers of small parcels have been invited to settle thereon, if the owner has done any affirmative act inducing the corporate authorities to treat them as town property, or if town settlements have approached near to them, so that their enjoyment in peace and good order demands the police regulations of a city, they are justly liable to municipal taxation.

12. ——: ——. If the owner has done no act, such as laying his lands off into lots, or asking for city grades, or to have streets opened to his lands, if he retains them in a large body, if they are half a mile from the settled part of the town, and no streets are or need to be opened for the use of owners of adjoining lots, occupied as town property, and their quiet enjoyment does not require a city police, then legislation subjecting them to city taxation, is unconstitutional and void.

The appellant filed his petition in the District Court for Douglas county, against the City of Omaha and Hahn, county treasurer, and alleged therein the following facts :

That he was, and for three years had been, seized of a quarter section of land; that part of the land included within the limits of the city was used for agricultural purposes merely, and that the town site laid off into lots was much larger than was now, or was likely to be, required for city purposes; that the plaintiff's land was two miles from the settled part of the town, and was one mile from any lands settled, improved, or occupied as town lots; that it is vacant and has never been divided, and he does not intend to divide it, into lots for town purposes; that such an enterprise would be impracticable, because it is distant from the city, and surrounded by lands which are vacant or only used for agricultural purposes; that by an act of the Legislature of the late Territory it had been included within the limits of said city; that he did not know of the passage nor of the application for said act, until three months before filing his petition; that the act

was passed for the sole purpose of subjecting the lands to the burdens of city taxation, and to reduce the city taxation on property previously within its limits, by compelling the plaintiff and others similarly situated to share the same, and that the peace or good order or prosperity of the city did not require that the lands should be brought under its municipal control; that the city assessor has assessed the said plaintiff's said quarter section of land, as city property, and for the expenses of its government, at the rate of forty dollars per acre; and the same are included in the levy of taxes, by said city, for said purposes; that the said defendant Hahn, as treasurer of the county, has advertised the same for sale, for the purpose of raising the sum so assessed and levied thereon, and unless restrained by the injunction of the court, will, in his official capacity, sell the same for said purpose.

The prayer of the petition is for an injunction, and that it be, by the judgment of the court, declared that said lands are not liable for the said taxes.

To this petition the defendants demurred generally. The demurrer was sustained, and the petition dismissed. To reverse this judgment this cause is brought to this court.

*J. M. Woolworth,* for the appellant.

I. The act is obnoxious to the objection of taking A's property and conferring it upon B; which is violative of the principles of natural justice.

1. This objection, if well founded in fact, is fatal, although it has not the sanction of constitutional provisions.—*Vattel, C.* 4, *sec.* 45–6; *C.* 1, *ch.* 4, *sec.* 51; 1 *Kent's Comm.* 600*; 1 *Black. Comm.* 41* and 91*; *Sen. Tracey, in Bloodgood* v. *Mohawk R.,* 18 *Wend.* 56; *Taylor* v. *Porter,* 4 *Hill,* 146; *Gardner* v. *Newberg,* 2

Bradshaw *v.* The City of Omaha.

*John. Ch.* 162 ; *Mr. Justice* Chase, *in Calder* v. *Bull* 3 *Dall.* 386 ; *Wilkinson* v. *Leland,* 2 *Peters,* 654 ; *Terrett* v. *Taylor,* 9 *Cranch,* 43.

2. Unless the rule be changed, either by the character of the parties, or by the nature of the proceeding, the objection is well founded in fact ; for the allegation in the petition is, that the sole object of the statute and of the proceeding, is to compel the owners of lands not within the benefit of the municipal government, to divide the expenses of supporting it with those who have need of it.

3. The fact that the party for whose benefit the property is taken is a city, does not affect the case.—*In re Albany Street,* 11 *Wend.* 149 ; *In re John Street,* 19 *Wend.* 659 ; *Morse* v. *Stocker,* 1 *Allen,* 150 ; *Bacon* v. *School District,* 97 *Mass.* 421.

4. Nor is the case affected by the fact that the oppression is exercised under the name of taxation.

*a.* Taxation is a taking of private property for public use, and is justified only by returning for the money thereby taken, the compensation of the benefits of government.—*The People* v. *The Mayor of Brooklyn,* 4 *Coms.* 419 ; *Morse* v. *Stocker,* 1 *Allen,* 159.

*b.* The nature of the act is not changed by giving it a name which sounds as if it were lawful.—*Walker* v. *Board of Public Works,* 16 *Ohio,* 540 ; *Mays* v. *Cincinnati,* 1 *Ohio St.* 268 ; *Wells* v. *City of Weston,* 22 *Mis.* 384.

II. The act is obnoxious to the further objection that it takes the plaintiff's property, without due process of law.

1. This principle of individual liberty, although not expressly saved to the people by a special provision in our constitution, must be taken as one of those rights which are retained by the general terms of section twenty of the declaration of rights ; for it has always been a fundamental doctrine of English liberty.—2 *Sullivan's Lec.* 243, *et pass ;* *Gardner* v. *Newbergh,* 2 *John. Ch.* 162.

2. The act confiscates the property of the plaintiff, for the benefit of the citizens and owners of property, within the just limits of the city.—*The People* v. *Smith*, 21 N. Y. 595 ; *Wenehamer* v. *The People*, 3 *Kern.* 390 ; *Taylor* v. *Porter*, 4 *Hill*, 140 ; *Holden* v. *James*, 11 *Mass.* 396.

III. The act infringes the provision of the constitution, which forbids the taking of private property for public use, without just compensation.—*Cheany* v. *Hooser*, 9 *B. Mon.* 330 ; *Covington* v. *Southgate*, 15 *Id.* 491 ; *Morford* v. *Weger*, 8 *Iowa*, 82 ; *Langworthy* v. *Dubuque*, 13 *Id.* 86 ; *S. C.* 16 *Id.* 271 ; *Fulton* v. *Davenport*, 17 *Id.* 404.

IV. The act, when taken by itself, does not authorize the taxation of the plaintiff's lands. That power is claimed from the other provisions of the charter, which, as is assumed, are extended over them. The mischiefs complained of are, therefore, collateral consequences of the act, which it is reasonable to suppose were not in the view of the legislature. The statute should be construed so as to avoid these mischiefs.—1 *Blackstone's Comm.* 91* ;· *Co. Litt.* 360 ; *Beatty* v. *Knowler*, 4 *Peters*, 152 ; *Sharp* v. *Spier*, 4 *Hill*, 76.

*G. W. Ambrose,* contra.

I. The first thing that strikes one on the examination of this petition, is the manifest impropriety in the court entertaining the question it presents.

No principle is better settled than that the legislature of a State has complete authority to amend charters of municipal incorporations, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, over-rule their action whenever it is deemed unwise, impolitic, or unjust, and even to abolish them altogether in the legislative discretion. The authorities on this subject are so numerous, and the cases in which this doctrine has been

Bradshaw *v.* The City of Omaha.

declared are so various in character and so familiar, that it seems almost unnecessary to refer to the following, which are some of them :—*Coles* v. *Madison County, Breese's R.* 115 ; *Richland County* v. *Lawrence County,* 12 *Ill.* 1; *Trustees of Schools* v. *Tahann,* 13 *Ill.* 27 ; *Robertson* v. *Rochford,* 21 *Ill.* 451 ; *People* v. *Power,* 25 *Ill.* 187 ; *Harrison Justices* v. *Holland,* 3 *Grattan,* 247 ; *Brighton* v. *Wilkinson,* 2 *Allen,* 27 ; *Sloan* v. *State,* 8 *Blackford,* 361 ; *Mills* v. *Williams,* 11 *Iredell,* 558 ; *Weeks* v. *Milwaukee,* 10 *Wis.* 242 ; *People* v. *Draper,* 15 *N. Y.* 532 ; *Aspinwall* v. *Commissioners,* 22 *How.* 364 ; *St. Louis* v. *Allen,* 13 *Mis.* 400 ; *State* v. *Cowan,* 29 *Mis.* 330.

If this principle is correct, then clearly the question of extending the boundaries of a city is a question of legislative discretion, to be determined upon a view of all such considerations of policy as have a bearing upon it, and with reference to the probable growth of the city, as well as of its present needs. The city bounds can never be confined to the precise limits occupied for urban purposes on the day its charter is passed; but the legislature looking to the future with wise foresight will be expected in our rapidly growing country to provide to-day for the wants of to-morrow, and to so frame their charters of incorporation as to bring within their influence all that territory that feels the benefit of city government in enhanced prices, and that, in the opinion of the legislature, is so distinctly pointed out for speedy occupation for city purposes, as to justify its being included.

And if the question is one of legislative discretion, no argument can be required to prove that the courts can have no jurisdiction over it. A court might with the same propriety review and set aside the legislative action in levying or refusing to levy a particular State tax ; in paying or refusing to pay a State debt ; in providing or refusing to provide bounties to soldiers ; in passing or refusing to pass

BRADSHAW *v.* THE CITY OF OMAHA.

a militia law, or on any other subject involving questions of policy, and where the legislature is to act upon its own judgment of what is proper, just and expedient. It is easy in any of these cases for an individual to charge the legislature with having acted improperly and from wrong motives; and if the courts can enter upon a consideration of such questions, they may easily draw within their juris- diction the whole legislative power of the State, and set aside the laws from their own views of the facts, when they find themselves differing with the legislature as to what is proper, just and politic. One coördinate department of the government would thus be made subordinate to another, which would exercise a supervisory power, limited only by its own discretion.

II. If the act extending the bounds of the city was passed by the legislature from proper and correct motives, and from proper regard to the growth and wants of the city; then it is plain that the courts cannot disregard or limit it. The petitioner seems to concede this by his peti- tion, but he attacks the law on the ground that it "was passed for the sole purpose, by bringing said lands within said city, to subject the same to the burdens of the taxa- tion of said city." In other words, the law is assailed by assailing the motives of those who passed it.

We deny the authority of any court to enter upon such a question. No court has a right to assume that the legis- lative motives have been other than proper and patriotic. "The courts cannot impute to the legislature any other than public motives for their acts."—*People* v. *Draper*, 15 *N. Y.* 545, *per* DENIO *Ch. J.*

"We are not made judges of the motives of the legis- lature, and the court will not usurp the inquisitorial office of inquiring into the *bona fides* of that body in discharging its duties."—*S. C. page* 555, *per* SHANKLAND, J.

"If this may be done, we may also inquire by what

motives the Executive is induced to approve a bill or with-hold his approval, and in case of withholding it corruptly, by our mandate compel its approval. To institute the proposed inquiry would be a direct attack upon the inde-pendence of the legislature, and a usurpation of power subversive of the constitution."—*Wright* v. *Defrees*, 8 *Ind.* 302.

The following cases are to the same effect : *Baltimore* v. *State*, 15 *Md.* 376 ; *People* v. *Lawrence*, 36 *Barb.* 193 ; *People* v. *N. Y. Central R. R. Co.*, 34 *Barb.* 137 ; *McCul-loch.* v. *State*, 11 *Ind.* 431.

III. No judicial decisions which have ever been made will sanction the granting of relief to the petitioner, except certain cases in Kentucky and Iowa.—*Covington* v. *South-gate*, 15 *B. Monroe*, 491 ; *Morford* v. *Weger*, 8 *Iowa*, 82.

These cases are unquestionably in point, and in them the courts have assumed to enter upon inquiries of fact, in order to determine whether the bounds of a city ought to have been extended so as to include certain lands, and if their judgment decided the question in the negative, they have restrained the collection of city taxes from such lands on the ground that the legislature must have included them from improper motives. Of these cases we say :

1. They have no basis in principle, but they lead neces-sarily to a usurpation by the courts of discretionary legis-lative power.

2. Inasmuch as they undertake to declare that a part of the lands in a city shall not 'be subject to city taxes, they prevent that uniformity of apportionment which is abso-lutely essential in every taxing district, and they are directly opposed to those cases in which it has been held that even the legislature cannot establish different rules of liability for the taxation of property within the same muni-cipal corporation.—*See Knowlton* v. *Supervisors, &c.*, 9 *Wisconsin*, 419.

3. The courts, in those cases, have departed from well settled landmarks, and have gone into inquiries where all is necessarily vague, conjectural, and uncertain, and in substance have exercised an appellate supervisory power over the legislature, upon a view, not of the law, but of the facts. They have assumed to say that the facts did not warrant the legislative action upon a subject clearly within its discretion; and in effect they have decided that the courts, and not the legislature, may determine when the public needs demand the extension of city limits. With great respect for those courts, we are forced to conclude, that either they have mistaken the true boundary between legislative and judicial power, or, if they have not, then that the power to grant and amend city charters should rest exclusively with the courts, and petitions for that purpose should be addressed to them rather than to the legislature.

IV. When the legislature clearly oversteps the bounds of their constitutional authority, and the conflict between their act and the constitution is beyond reasonable doubt, a court may declare the act unconstitutional and void. Here is safe ground for the courts to stand upon, and in such a case their duty is plain. But unless the conflict is clear, the duty is equally plain to enforce the law.—*Sill* v. *Covering,* 15 *N. Y.* 531; *Sears* v. *Cottrell,* 5 *Mich.* 251,

The courts are the guardians of the constitution, but they are not the guardians of the legislative conscience, discretion or judgment. They annul unconstitutional laws by enforcing the higher and paramount law which the Legislature has disregarded. But except so far as the will of the people is declared in that higher and paramount law, the complete law-making power of the State is vested in the legislature, and its will, when expressed in due form, is as much binding upon the courts as upon private citizens. The people have not attempted by their consti-

tution to limit the legislative authority in respect to the bounds which shall circumscribe their municipal incorporations. If the people have set no limit the courts can set none. And it is respectfully submitted that in undertaking to do so the courts venture upon ground which is doubly dangerous :

1. Because it is setting the courts over the legislature in a matter of mere legislative discretion.

2. Because in doing so they are compelled to charge the legislature with improper and discreditable motives. And thus they necessarily invite collision and unseemly conflict with a coördinate department of the government.

I have given to this case this somewhat extended examination, from the fact that it was a test case, involving questions the decision of which will be the governing rule in all future legislative action in the State. And with the submission of these views, I would ask that the judgment of the court below be affirmed.

MASON, Ch. J.

The city of Omaha was incorporated in 1857. By the act of incorporation more than three thousand acres were included within its limits. The charter has been amended at almost every session of the legislature since ; some times the boundaries of the city have been extended, and sometimes contracted.

At the last session of the territorial legislature, the last amendment was made. Before that amendatory act was passed, the city limits on the north were, a mile beyond lands laid off into lots. On the other side, the distance was not so great, but it was very considerable.

This legislation has been very mischievous ; lands included within the limits of an incorporated city are not subject to entry under the preëmption law of 1841.—*Root* v.

*Shields, Mr. Justice Miller's Decisions,* 334. Until 1859, title in fee could be acquired to any portion of the public land in Nebraska, except under that law. A great many shifts were resorted to, to avoid its stringent provisions. The exclusion of lands within a city from its privileges was disregarded by parties and by the land department of the government. Consequently numerous and most serious litigations have sprung up. Besides that, a speculative character has been given to these lands, because, within the city limits they have been held at very high prices. They have not generally been cultivated as farms — the only purpose to which they could be applied, for many years. These remarks are true of many other cities in Nebraska.

The last legislative act amends the charter of the city only in its first section, which defines the boundaries of the corporation. By it, the boundaries are extended beyond the former lines, on the north, half a mile, on the west, a mile, and on the south, from a half a mile to a mile. An area of over twenty-five hundred acres is thus added to the former very extended city jurisdiction.

An explanation of this very extraordinary measure may be found in the fact perhaps, that at the same session of the legislature, the city was authorized to aid the building of the bridge over the Missouri by the Union Pacific railroad, to the extent of $100,000, and has contracted other large debts, in securing the valuable railroad connections, which have lately stimulated its growth to a city of the first class. It is charged in the petition in this cause, that the amendment was made in order to lighten from the shoulders of people living within the city proper, the burden of the taxation which will be necessary to pay these debts and the interest on them, by dividing it with those who live or own land beyond the former corporate limits. And the charge seems to be justified, because admitted by the demurrer.

This action was brought to restrain by injunction, the

authorities from selling the plaintiff's lands for non-payment of taxes levied by the city, and to have it declared by the judgment of the court, that these lands are not liable to be taxed by the city. To the bill a general demurrer is filed. The land thus sought to be protected, lies two miles from the settled part of the town, and one mile from any lands improved or occupied as, or laid off into town lots. The lands adjoining it are either vacant, or are used for agricultural purposes only. Between it and the city, lies a whole quarter section undivided and cultivated as a farm. A cemetery adjoins a part of it on the south, and also the large farm of Jesse Lowe. On the east is a tract of many hundred acres almost entirely unoccupied, and whatever improvements there are, are agricultural in their character. If any land can be protected from city taxation, it would seem as if this should be. The plaintiff is entitled to the relief he seeks if the court can grant it. It is insisted that we have not the power to grant it, because, it is said, the taxing power is in our government, committed exclusively to the discretion of the legislature, and this defense is put forward as a question of the jurisdiction of the court.

Questions of this nature always require the first attention.

It is to be observed, at the outset, that there is no provision in our constitution which in terms limits the legislative power of imposing, or distributing or enforcing taxes. I speak of provisions aimed directly at this power. In the constitutions of most of the States, express provisions on this subject will be found ; as, for instance, that the levy of taxes shall be uniform, that the property of non-residents shall not be taxed higher than the property of residents, &c. We have no such clauses in our constitution. But, as we shall see hereafter, we have some general provisions, under the protection of which, the taxing as well as any other power of the legislative or executive branches of the government, may be restrained.

BRADSHAW *v.* THE CITY OF OMAHA.

Another observation : the case before us presents the question of the power of the legislature, to authorize a municipality to tax for its purposes any and all property, whether justly within its territorial limits or not ; which is very different from the question of such power, when exerted by the State for State or general purposes. The relation of the citizen to the State and to a particular city are very different.

Of the former he is a member both rightfully and legally. He owes to it certain high and sacred duties, not the least of which is contributing to its support. Of the latter he may not be a member, he may owe to it no duties, he may derive from it no benefits.

To illustrate : suppose the city of Omaha were by its proper authorities to determine to build a sewer on one of its streets ; its citizens would be interested in and benefited by this work and would be justly required to pay for it. But would it be right to require a farmer, living ten or five, or even two miles from the city, to share the burden of this expense with those who justly should pay for it ? Obviously not. On the other hand, suppose the State should determine to build a road through some section, remote from some other, and attempt to raise the money for defraying the expense by taxing all parts alike. This would not be unjust. By opening up, improving, developing one district of country, drawing in settlers, planting farms, building schools, churches, homes, nursing commerce, and fostering, rearing, extending communities, the State and every district of the State is benefited, and every citizen is benefited. It is by the aiding of one section at a time, by developing it, by building it up, that the State grows to that great majestic, glorious stature, which sheds its lustre on every citizen, and fills his breast with pride, no matter how humble he may be.

In a word, a city's taxes are for local, a State's for general

Bradshaw *v.* The City of Omaha.

purposes. Of the one, a man may or may not be, of the other, he must be a member. The improvements of one may or may not, those of the other must measurably benefit him.

Extreme cases may be stated on the one hand and on the other. The supposed instances may come so near together that the distinction may be without a difference. But it is not the duty of the courts to lay down exact rules to which every case must be brought. It never attempts to lay down more than general rules, which are flexible in their just application to particular cases.

The distinction which is pointed out above, applies to the power or propriety of the court interfering, with what the counsel call "legislative discretion," when conferring taxing power for the benefit of the State, and when conferring them for the benefit of a city. In the former case, in almost every instance, the exercise of the taxing power is political, but in the latter it is purely administrative in almost every instance. I can only point out these obvious distinctions, without following them out or illustrating them at length. The fallacy of the argument of the learned counsel for the city, consists in laying down what he deems just considerations as to the jurisdiction of the court, and then applying them to an entirely different subject of municipal taxation.

The question is then narrowed down to this: Can a legislature authorize a city to tax for its support, lands not reasonably to be considered city property?

We are able to go along with the counsel for the city in many of his positions. We think with him that the legislature has exclusive authority to amend the charter of municipal corporations, enlarge or diminish their power, extend or limit their boundaries or even to abolish them altogether. And this may be done with a view to the future, as well as to the present wants of the city. So too,

we agree with him if the question is purely one of legislative discretion, the court has no jurisdiction over it and that we cannot declare a law unconstitutional from any regard to the motives which influenced the legislature in passing it. But this does carry us one step towards the point he must reach, to maintain his proposition. The legislature may very well be vested with exclusive power to determine whether a municipal goverment is needed, to aid in maintaining the public order, over lands which are not justly taxable for the maintenance of such a goverment. And as that question is not one of property or private right, with which alone the court can deal, it will not meddle with it.—*Georgia* v. *Stanton,* 6 *Wallace,* 50.

But it is a question of property and private rights, whether such lands should bear a burden or a share of a burden, for another's benefit. And therefore it may be a question for the determination of the court.

But we may, and we are bound in determining the constitutionality of a law, to examine all enactments bearing on the question; and if in so doing we discover that their effect, all taken together, is unjust, and oppressive, and violative of some principle of the constitution, we are bound to raise the shield of that fundamental charter over the otherwise prostrate and powerless citizen. While we shall always thus interfere with hesitation, and only with any act which the legislature may pass when our way is clear before us, we shall not consciously fail in this our highest and most sacred duty.

Of course it is admitted that if the legislature pass an act which takes private property for public use, without just compensation, it is unconstitutional, and must be so declared by the court.

The counsel for the city assumes that that constitutional provision does not apply here, because for some reason the subject is committed exclusively to legislative discretion.

BRADSHAW *v.* THE CITY OF OMAHA.

He did not point out any reason why it should not apply here as well as elsewhere. Nor does any other reason occur to me but these two : that the property is taken for a city, and that there is something in the nature of taxation which distinguishes that mode of taking a man's property from all others.

Is the nature of the act complained of changed because the money raised by the tax goes to a city ? We think not. We. shall content ourselves by presenting on this point the views of learned courts which seem to us decisive.

The case *In re Albany Street*, 11 *Wend.* 149, was a motion on behalf of the city of New York to confirm an assessment of the damages arising from the proposed extension of Albany street. It was resisted by Trinity, Church, on the ground that more of its church-yard was taken than the proposed extension of the street required.

This was justified by the act of the legislature, which provided that where part only of any lot or parcel of land shall be required, if the commissioners deem it expedient to include the whole lot in the assessment, they shall have power so to do, and the part not wanted for the particular street or improvent, shall upon confirmation of the report, become vested in the corporation, which may appropriate the same to public uses, or sell the same in case of no such appropriation.

Chief Justice SAVAGE delivered the opinion of the court, and said on this point : " If this provision was intended merely to give the corporation capacity to take property under such circumstances, with the consent of the owner, and then to dispose of the same, there can be no objection to it : but if it is to be taken literally, that the commissioners may, against the consent of the owner, take the whole lot, when only a part is required for public use, and the residue to be applied to private use, it assumes a power, which with all respect, it did not possess.

BRADSHAW *v.* THE CITY OF OMAHA.

"The constitution authorizing the taking of private property for public use, impliedly declares that for any other use, private property shall not be taken from one and applied to the private use of another. It is in violation of a natural right; and if it is not in violation of the letter of the constitution, it is of its spirit, and cannot be supported. This power has been supposed to be convenient; when the greater part of a lot is taken and only a small part left not required for public use, and that small part is of but little value in the hands of the owner. In such case, the corporation has been supposed best qualified to take and dispose of such parcels, or gores as they have sometimes been called, and probably this assumption has been acquiesced in by the proprietors. I know of no case where the power has been questioned, and where it has received the deliberate sanction of this court. Suppose a case where only a few feet or even a few inches were wanted from one end of a lot to widen a street, and a valuable building stands upon the other end of the lot; would the power be conceded to exist to take the whole lot whether the owner consented or not? Or suppose the commissioners had deemed it expedient or proper in the case, in the language of the statute, to take the whole of the church-yard, the act would equally have been within the letter of the statute, with their act in the present case, and yet no one would suppose that the legislature ever intended to confer such a power. The quantity of the residuum of any lot cannot vary the principle. The owner may be very unwilling to part with only a few feet; and I hold it equally incompetent for the legislature thus to dispose of private property whether of feet or acres are the subject of this assumed power.

"I am clearly of the opinion that the commissioners had no right to take the strip of land in question, against the consent of the corporation of Trinity Church."

BRADSHAW *v.* THE CITY OF OMAHA.

The case *In re John and Cherry streets*, 19 *Wend*. 659, was also a motion to confirm a like report of commissioners in reference to the two streets named in the title. The commissioners were appointed for the purpose of straightening and closing up a part of the streets. This was done in such a manner that between the lots of owners and the straightened streets were narrow strips of land, which by the law under which the proceedings were had, became the property of the city. The streets were ancient ways, and upon discontinuance reverted to the owners, as *residuum filum viae ;* and the question presented was, whether the act conflicted with the constitutional provision quoted above, by taking these strips from the lot owners, and conferring them on the city. That great Judge, COWAN, delivering the opinion of the court says, on this subject : "Under the provisions of our constitution, property cannot thus be transferred, unless it be taken for public use, and not then except on payment of, or a provision for a just compensation. Accordingly in *Albany street*, 11 *Wend*, 149, it was held that a statute making provisions for transferring to the corporation of New York, a title to the fragments of lots which had been broken, in laying out streets, though the same statute required compensation to be made, was void, on the ground that the land was not taken for public use. The late Chief Justice then said, that the clause withholding private property from public use, unless with compensation, in itself, implies that it shall not be taken for individual use, and such I think is still more clearly the meaning, when that clause is considered in connection with the preceding one, exhibiting a deprivation of property, without due process of law. This clause is an enlargement and extension of the words in *Magna . Charta*, ch. 29. 'No free man shall be disseized of his freehold, &c., but by the law of the land.' These words 'by the law of the land' as said by *Coke,* 2 *Inst.* 50, are properly rendered 'due

[S. C. N.] 3

process of law,' among which he mentions the writ original at the common law, the ordinary mode of commencing a suit to try a title and see 3 *Story Comm. on the U. S. Const.* 661, § 1783. Our constitution adopts the very words of Coke, and means undoubtedly that to work a change of property from one person to another, some proceeding must be had in court of justice or before magistrates; at least, that the legislature should have no power to deprive. one of his property and transfer it to another, by enacting a bargain between them, unless it be in the hands of the latter a trust for public use. The Chief Justice in the case. of Albany street adds what is very obvious, that the quantity of land intended to be taken by the statute cannot vary the principle, and that the legislature are incompetent to dispose of private property in this manner, whether in feet or inches. I cannot bring myself to doubt that the case was decided upon correct grounds judiciously applied, nor have I been able to distinguish the present from that case.

" It is said that the city of New York is a public corporation, and that therefore all its property is for public use. The argument is equally applicable to all other municipal corporations by which the State is covered. If it be good for a city, it is equally so for a county, town or village, all of which may become legislative purchasers upon summary appraisal and then sell out to individuals, using the avails for the benefit of the corporation. Such a construction would make the constitutional clause a dead letter."

Other cases to the same effect might be quoted, but from the two above cited, the law appears plain, that when a city seeks to appropriate to its use, whether with or without compensation, the object for which it does so, must be for the use of the public and not merely for some matter of advantage to it, as an entity distinct from the individual

BRADSHAW v. THE CITY OF OMAHA

or from the aggregation of individuals for whose government it is organized.

If it does take property for its own aggrandizement instead of the public use, it offends against the constitution just as much as if it were to take A's property, without his consent and confer it upon B.

The other question mentioned, is whether or not doing this by means of the taxing power, changes the principle. I never heard it suggested before, that that power was above the jurisdiction of the court and above the constitution. It has been restrained by ordinances of French parliaments, by charters of English parliaments, and by provisions in American constitutions.

Burke says that "the great contests for freedom in England were from the earliest times chiefly upon the question of taxing. On this point of taxes, the ablest pens and the most eloquent tongues have been exercised, the greatest spirits have suffered. They proved not only that the right of granting money had been acknowledged to reside in the House of Commons, but that in theory it ought to be so, whether the old records had delivered this oracle or not."

And in this country, where the danger to liberty is not from the one against the many, but from the many against the few, and where written constitutions have been framed mainly to protect minorities from majorities, the power of taxing has been granted by the sovereign people, to the legislature, with many guards and strict limitations. And as the contest for freedom in England has been chiefly upon this question of taxing, claiming it for parliament and denying it to the king, if the theory put forth now is to obtain, that conquest in America must be renewed upon the same point, restraining the legislature by fundamental laws, made by the people, for the control of every depart-

ment of government, as well as of the citizen. But there will never be any need of such an effort.

The taxing power, even when exercised by the legislature, has recognized the restraints of the constitution. As, witness the great number of cases in the courts reported in all the volumes of the law on this very subject. But I do not think it necessary to follow the counsel for the appellant into the discussion of some theories on this subject which he has presented.

He lays down the proposition, that the property of A cannot be taken away from him and given to B. He says that while this principle of natural justice has not the sanction of constitutional provisions, the courts will yet enforce it. And he cites a number of the highest authorities in support of this line of argument and of this position. With all respect for the great writers and judges whose opinions he cites, I think that line of argument is opening a field of discursive theorizing altogether too wide ; for what is needed in constitutional discussions, is plain, obvious, strong reasoning, carrying conviction to the mind. If we are to theorize about abstract principles of natural justice outside of the fundamental law, we are introduced into a vague, hazy, uncertain region, where we cannot tell whether we are walking the solid earth, or floating among the clouds. It is not necessary to consider this matter on any abstract principles. The property of A can not be taken from him and given to B, in this country, not because it is contrary to natural justice, but because it is in violation of the constitution. To that effect is the case last before cited, and there are many others in which the same view has been held.

When the constitution says that private property shall not be taken for public use without just compensation, it implies very clearly that it cannot be taken for private use, either with or without compensation.

BRADSHAW *v.* THE CITY OF OMAHA.

That is the same in effect as the axiom quoted as a rule of natural justice.

The other principle evoked, that a citizen can not be deprived of his property without due process of law, is obnoxious in its application here to the same objection, although not to the same extent. I have no doubt that the benefit of that clause from *magna charta* is retained to us under our constitution, if not by a special provision, at least by the general terms of section twenty of the bill of rights; for unquestionably it is a fundamental doctrine of liberty as held in modern times.—2 *Sullivan's Lectures,* 243 *et pas.; Chancellor* KENT *in Gardner* v. *Newbergh,* 2 *John. Ch.,* 162.

Confining ourselves to the single provision of the constitution which inhibits the taking of property for public use without just compensation, is there anything in the nature of the taxing power which should prevent the court from inquiring whether a particular legislative act authorizing a city to levy and enforce taxes for its purposes, violates that provision?

In *The People* v. *The Mayor, &c., of Brooklyn,* 4 *Coms.* 419, RUGGLES, J., delivering a most elaborate and well considered opinion, says on this subject: "Private property may be constitutionally taken for public use in two modes: that is to say, by taxation and by right of eminent domain. These are rights which the people collectively retain over the property of individuals, to resume such portions of it as may be necessary for public use. The right of taxation and the right of eminent domain, rest substantially on the same foundation. Compensation is made when private property is taken either way. Money is property, taxation takes it for public use, and the taxpayer receives or is supposed to receive his just compensation in the protection which the government affords to his life, liberty and property, and in the increase of the

value of his possessions by the use of which the government applies his money raised by the tax. When private property is taken by right of eminent domain, special compensation is made for the reason heretofore stated." The same language is held by other eminent judges.

It is clear then, that no particular tax can be justified under the restraint of this provision of the constitution, unless some benefit accrue to the tax-payers from the purposes to which it is applied. In case of a general tax as we have seen above, this is always presumed. In the case of a city tax, that may not be the case. Hence it follows that when it is not the case, the court will intervene. It was on this principle that *Wells* v. *The City of Weston*, 22 *Mis.* 385, was ruled. There the legislature authorized the city to tax lands beyond and adjoining its limits. The Court held that this was taking one man's property under the form and name of taxation and giving to another, which we have seen is prohibited by the constitutional provision which we are considering. On this ground the tax was held illegal.

I have now shown upon principle that the legislature does not possess unlimited power over this subject, and that the case at the bar is not in its nature beyond our jurisdiction.

We now approach the peculiar features of this case. We have now to inquire whether lands situated as the lands here in question are above stated to be situated, and of the character above described, are liable to taxation by the city for city purposes. Several cases were cited at the bar upon this very question which relieve us of the labor of an independent consideration of this question.

*Cheeny* v. *Hooser*, 9 *B. Mon.* 330, was an action of trespass, brought by Cheeny to recover damages for the taking and conversion of his horse by Hooser, who justified as Marshall of Hopkinsville, by virtue of an assessment of

BRADSHAW *v.* THE CITY OF OMAHA.

taxes by the trustees of the town of which the plaintiff was alleged to be a citizen. The plaintiff denied the citizenship, and thus was raised, or sought to be raised, the question whether the property of the plaintiff who resided without the limits of the town prior to the act of February, 1846, but who by its provisions was brought within its limits, was subject to taxation levied by the proprietors, of and for the benefit of the town. The act like the one we are here considering, made no express grant of power, but simply amended the act by extending the limits of the town.

Chief Justice MARSHALL delivered the opinion of the court. In his very carefully considered judgment, he concedes to the legislative branch of the government all that can possibly be claimed for it, in respect of the power to incorporate towns, to extend their limits, to confer upon their authorities power to impose taxes for local purposes, and to designate the subjects of property and the class of persons to be taxed. He says : "It is palpable that persons or their property are not subject to a burthen for the benefit of others, or for purposes in which they have no interest and to which therefore they are not bound justly to contribute, no matter under what form the power is professedly exercised ; whether it be in the form of laying or authorizing a tax, or in the regulations of local divisions or boundaries, and which results in a subjection to a local tax, and whether the operation be to appropriate the property of one or more individuals without their consent, to the use of the local or general public, or the use of other private individuals, or of a single individual, the case must be regarded as coming within the prohibition contained in this clause of the constitution. That we are impotent for the protection of individual rights or property from any aggressions however flagrant, which may be made upon them, provided it be done under color of some recognized power, we are not prepared to concede."

BRADSHAW *v.* THE CITY OF OMAHA.

He again says "this is not the case of vacant land or of a well improved farm occupied by the owner and his family alone, for agricultural purposes, and which without being required for either streets or houses, or for any other purposes of the town but that of increasing its revenues, is brought within its taxing power by extending its limits. Such an act, though on its face simply extending the limits of a town, and therefore presumptively a legitimate exercise of power for that purpose, would in reality, when applied to the facts, be nothing more or less than an authority to the town, to tax the land to a certain distance outside of its limits, and in effect to take the money of the proprietor for its own use, without compensation to him. But suppose a proprietor of a farm adjoining an established and flourshing town, should lay out his land upon the town limits in small lots, and by selling or leasing them, should invite the building or occupation of houses, and in fact raise up a town, could he or his alienees or lessees, or the residents in his town, complain if the legislature should take jurisdiction over it? And then either enact a separate municipal goverment for them, or incorporate them with the adjoining town from which they had taken their growth?

"We do not admit that persons who have thus concurred and assisted in making a town in fact, could say they had not consented, or that their actual consent was necessary to its being made a town in law; and although, if the two towns were incorporated into one, some inequalities might exist in the appropriation of the taxes between the two towns considered separately, and to the advantage of the larger one, this would not necessarily nor probably follow to an extent greater than is found to exist between the closely and thinly settled portions of any town; and it certainly would not be assumed, from the incorporation of the new with the old town, and its consequent subjec-

BRADSHAW *v.* THE CITY OF OMAHA.

tion to a common taxation with all the citizens, that there was any flagrant abuse of the power of taxation, or of local regulations amounting to the tax being of private property for public use without compensation.

"The essential difference between the case supposed, is that when the limits of a town are not filled up, and it has not in fact extended itself beyond them on either side, and upon the petition of the town the adjacent vacant land or cultivated farm not necessary or wanted for streets or houses, is brought within it by an extension of its boundary, the whole force and effect as well as the obvious intent of the act is, to subject those exterior lands to the taxation of the town, without even a pretext for extending the protection or control of the town over them; and the power of local regulation and government would furnish no legitimate or real basis for the act; while with other cases, the actual growth of the town beyond its legal limits or any of its borders, furnishes a basis and motive for legislative interposition not merely for the purpose of subjecting the exterior part to the taxing power of the town, but also for extending over it the government and care of the municipal authorities, with the equal right of participating not only in their elections, but also in the benefits to result from the appropriation of the common revenue of the town, to the convenience and security of the new portion in common with the rest."

The case of *Covington* v. *Southgate,* 15 *B. Mon.* 491, was an action brought by Southgate to recover against the city $625, which he had been compelled to pay as city taxes, upon one hundred and sixty acres of land of which he was owner, and which without his consent had been included within the city limits by act of the legislature. The land was used exclusively for agricultural purposes. The former boundary of the city adjoined it. On the east boundary of Southgate's land, was a tract of several hun-

dred acres, on which, to a considerable distance from the former city limits, lots had been laid off, and on which lots were inhabitants, and which could be conveniently reached only by a passage over Southgate's land ; but on the part of the former townsite, near and adjoining Southgate's land, there were but few houses and many vacant lots. Chief Justice Marshall also delivered the opinion of the court in this case. He says he concurs with the opinion of the Circuit Court, "that there was no legitimate necessity of the city which required that this portion of Southgate's land should, at the date of the act which the city procured without or against his consent, or should even at this time, be included within its boundaries. There is little reason to apprehend that when the city actually grows up to the land now in question, the proprietor, whoever he may be, will withhold it from the necessities of a growing population.

"Even if the land of Southgate be lawfully within the city, it cannot be coercively appropriated for streets without that compensation which the constitution secures for private property taken for public use. And there is certainly no power to take any part of it for buildings or other private use, but by contract with him. Then the only apparent purpose to be effected by including his land within the city without his consent, is that of subjecting it to taxation for the benefit of the city, and without any advantage to him. As Southgate has made no town and desires none, as there appears to have been no legitimate necessity which might justify the extension of the boundary so as to include it within the city against his consent, and as the obvious effect and probable purpose on the part of the city was to subject it to taxation, for the exclusive benefit of the town, it would seem that if there ever was a case of taking private property for public use in the form of taxation, under color of the extension of the boundaries

BRADSHAW v. THE CITY OF OMAHA.

of a town or city, and without making compensation therefor, this must be regarded as one."

The next case is that of *Morford* v. *Weger*, 8 *Iowa*, 82. The facts are briefly stated in the opinion of the court by STOCKTON, J.: "The only question to be considered in this case, is whether the act of the legislature of Iowa, approved July 14, 1856, entitled 'An act to amend the act to incorporate the city of Muscatine,' is constitutional. By this act it is conceded the limits of the city of Muscatine were extended about one mile on the east, and about two miles on the north and west, beyond its former boundary. The plaintiff lived upon the territory brought into the city by the act aforesaid, upon land used exclusively for farming purposes, about one mile from the old city limits, and about the same distance from any land laid out into city or town lots, or used as city property. His land so used, was taxed by the city at the sum of one dollar per acre. This tax he refused to pay, and his property being distrained for the payment thereof, he brought this action of replevin to test the contitutionality of this act, extending the limits of the city."

On the subject we are here considering, he holds this language :

"The municipal corporation is the mere creature of the law. The town itself in its material constituents, is the result of the voluntary act of the inhabitants. When there is a town or city *de facto*, there can be no question of the power of the legislature to provide for it a local government, and to authorize local taxation for its support. The greater burden of taxation is compensated for, in the greater advantages conferred by the municipal government. The consent of every individual to the authority of the local government is not deemed requisite, in order to subject him or his property to its jurisdiction, or is it

implied, in the fact of his placing himself in a condition to require such local government.

"If the legislature, independent of the question of taxation, may rightfully impose the authority of a local government on persons, who, by building in close proximity, have made a town *de facto*, it would seem hardly reasonable that the expense of such government should be borne by the county and State; and as little reason, we think, can exist, why the legislature may not require the local population to support by local taxation, the government provided for it. *   *   *   *   *   *   *

"Legitimate taxation, whether under the State or the municipal authority, is not the taking of private property for public use without compensation, within the meaning of the constitution. The protection afforded by the government to the citizen is usually conceded the just compensation referred to by the constitution for all private property he is required to surrender to the public use in the shape of taxes. And it is only where an undue proportion of the burden of taxation is laid upon him, or when the power of local taxation is made to operate upon those who, being out of the reach of the local benefit, ought not to be subject to the local tax, that there can be any plausible ground for alleging that property taken for taxes authorized by law is taken without compensation."

The learned judge then states at length the case of *Cheeny* v. *Hoover*, cited above. He then proceeds:

"If there be such a flagrant and palpable departure from equity in the burden imposed, if it be imposed for the benefit of others, or for purposes in which those objecting have no interest, and are therefore not bound to contribute, it is no matter in what form the power is exercised; whether in the unequal levy of the tax, or in the regulation of the boundaries of the local goverment, which results in

subjecting the party unjustly to local taxes, it must be regarded as coming within the prohibition of the. constitution, designed to protect private rights against. aggression however made, and whether under color of recognized power, or not."

" But if the case is that of vacant land, or a cultivated farm occupied by the owner for agricultural purposes, and not required for either streets or houses or other purposes of a town, and solely for the purpose of increasing its revenue, it is brought within the taxing power by the enlargement of the city limits, such an act though on its face, providing only for such extension of the city limits, is nothing more than authority to the city to tax the land to a certain distance outside of its limits and is in effect the taking of private property without compensation."

The opinion proceeds further to support the views above expressed in a most exhaustive manner. Enough has been quoted, not only to show what was the judgment of the court upon the subject, but also to indicate pretty clearly the sound and conclusive reasoning upon which it is based.

The next case was that of *Langworthy* v. *The City of Dubuque*, 13 *Iowa*, 86. Wright, J. says in the opinion, that it appears " that the lands were not necessary for city purposes ; that they were not lots nor out-lots, but lands used for mining, horticulture, grazing, farming and other similar purposes ; that the sole object of bringing them within the city limits was to increase the city revenue ; that the complainants did not, nor did they propose to lay them off into lots, or invite purchasers to settle upon and occupy them." He cites the case of *Morford* v. *Unger*, *supra*, as conclusive of the question contenting himself with that judgment and a few general words of his own in support of it.

The next case is that of *Fulton* v. *The City of Davenport*, 17 *Iowa*, 404, in which the situation of the lands is

thus defined. "Said land is a tract of about eighty rods long, north and south, by about thirty rods wide east and west, and contains about sixteen acres, and is situated about one mile from the present western boundary of the city, and from the eastern boundary of the city, two miles lacking thirty rods; from the northern boundary of said city it is half a mile, and eight hundred feet; from the southern boundary of said land to the city, it is seven-eighths of a mile. It has for eleven years or more, been used for farming and agricultural purposes, and no other, has never been laid off into city or town lots, and has not a road or street open to or touching it, either from said city or elsewhere. The nearest house on the south is ninety rods distant. On the west are three frame buildings, the nearest of which is quarter of a mile distant. On the north there are no buildings in sight of the city. On the east are six buildings twenty-six rods from the land. On the north-west the city is pretty well built up. South of the land the city is thickly settled. An east and west line drawn through the geographical centre of the city would come about one rod south of the southern line of this land. A very large portion of the built-up portion of the city, lies south and east of this line. The city is built up at some distance from the land both east and west of it, further north than the land, but in its vicinity is not built up or improved, by way of streets, &c., and never has been."

LOWE, J. delivered an extended opinion approving and applying *Morford* v. *Weger*, and laying down a rule for determining what lands are, and what are not justly liable to taxation by the city, thus: "When the proprietor of undedicated property being locally within corporate limits holds such close proximity to the settled and improved parts of the town, that the corporate authorities can not open and improve its streets and alleys, and extend to the inhabitants thereof its usual police regulations and advan-

tages without incidentally benefiting such proprietors in their personal privileges and accommodations or in the enhancement of their property, then the power to tax the same arises, but in its exercise great care and circumspection should be exercised lest perchance an injustice and oppression may ensue.

"Now, applying this rule to the property involved in this case in the light of the facts and circumstances above reported to us by the referee, we can not be at a loss where to place this property, and to hold at once that locally it occupies no such attitude towards the improved parts of the town, that it can be legally taxed for municipal objects."

After these extended citations, it will bring out the strength of the case at the bar, to rehearse the situation of the lands successively protected by these numerous adjudications, and compare them with those now in question. In the two Kentucky cases, the cities had, in their actual growth, reached to and in one case beyond the lands.

In the first Iowa case, the lands were about a mile from any lands laid out as town lots, or used as town property, and were used for farming purposes.

In the secondly cited Iowa case, all that is said of the lands is that they were not needed for, or used as city property.

In the last case cited, the lands were within twenty-six rods on one side and ninety on the other of improvements, and the city had been built up on each side and beyond it. But no streets had been opened to it, and it had been used exclusively for farming purposes. It contained only sixteen acres.

In all these five cases the legislation subjecting them to city taxation was held unconstitutional.

In this case the land is alleged to be two miles from the settled part of the city, and one mile from any lands improved or occupied as town lots; the adjoining lands

are either vacant or used for agricultural purposes only; between these lands and the city, is a whole quarter section used as a farm.   A cemetery and a large farm bounds this tract on the south.   On the east are several hundred acres entirely vacant, and on the west and north are no improvements whatever.   No streets approach nearer than a mile, and no house is nearer than a mile.   If the cases cited are law, this in every circumstance is much stronger. These cases are cited with approval by Sedgwick in his great work on Construction, page 675 in the notes, and are quoted by Mr. Justice COOLEY of the Supreme Court of Michigan, in his late most interesting and able treatise on Constitutional Limitations.   They seem to meet his approval, as the result of them is stated without qualification in the text.

From these cases, and from the abundant reasons by which they are sustained, may be deduced the following tests of the liability of lands to taxation by a city, within which they have without the owner's consent been included.

1. If the lands have been divided into town lots, if purchasers of small parcels have been invited to settle thereon and occupy them, if the owner has done any affirmative act leading the city to treat the property as town property, or if town settlements have approached near to them, so that the enjoyment of them in peace and good order, demands the police regulations of a municipal corporation, then the lands are liable to taxation.   2. On the other hand, if the owner has done no act, as by laying the lands off into lots, or asking for city grades, or applying for opening streets, if he retains them in a large body of such size as is manifestly inadmissible in a city, and if they are situated at a distance of a mile or half a mile from the settled part of the town, and no streets are or need to be opened for the use of owners of adjoining lots, and their quiet enjoyment does not require a city

Bradshaw *v.* The City of Omaha.

police, then the legislation is obnoxious to the objection, that it infringes the constitution, and must be so declared by the court.

We do not attempt to draw the line between such lands as are taxable and such as are not. Each case must be determined by its own circumstances. But the tests above mentioned will furnish an easy solution to any case which may arise. Tried by them, the legislation here complained of, cannot be sustained. It is unconstitutional and void.

The demurrer should have been sustained, with leave to the defendants to answer if they desired to do so. The judgment of the District Court must be reversed, and the cause remanded, for such further proceedings, in pursuance of the principles of this opinion, as to the court may seem just to be had or permitted. The defendant must pay the costs of this appeal.

Judgment reversed and cause remanded.